[No. S032210. July 25, 1994.]

R. R. HENSLER, Plaintiff and Appellant, v.
CITY OF GLENDALE, Defendant and Respondent.

**6**

COUNSEL

Crosby, Heafey, Roach & May, Gideon Kanner, M. Reed Hunter and James C. Martin for Plaintiff and Appellant.

Ronald A. Zumbrun, James S. Burling, Alexander Dushku, Crahan, Javelera, Ver Halen & Aull, Marcus Crahan, Jr., Laskin & Graham and Richard Laskin as Amici Curiae on behalf of Plaintiff and Appellant.

Scott H. Howard, City Attorney, Freilich, Stone, Leitner & Carlisle, Freilich, Kaufman, Fox & Sohagi, Benjamin Kaufman and Robert F. Freilich for Defendant and Respondent.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Jan S. Stevens, Assistant Attorney General, Richard M. Frank and J. Matthew Rodriquez, Deputy Attorneys General, Shute, Mihaly & Weinberger, Fran M. Layton and Susannah T. French as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**BAXTER, J.**—The parties in this case ask the court to determine the statute of limitations applicable to a complaint in inverse condemnation which alleges a taking of real property resulting from the adoption, or application

to the plaintiff's property, of an ordinance enacted pursuant to the Subdivision Map Act. (Gov. Code, § 66410 et seq.) We conclude that an action in inverse condemnation, whether or not joined with an action in administrative mandamus (Code Civ. Proc., § 1094.5) challenging the ordinance or its application to the plaintiff's property, is governed by Government Code section 66499.37[1] (hereafter section 66499.37) unless it alleges the existence of a final judgment establishing that there has been a compensable taking of the plaintiff's land.

The legislative intent is clear. Section 66499.37 was enacted to ensure that any challenge to local legislative or administrative acts or decisions taken pursuant to ordinances enacted under the authority of the Subdivision Map Act will be brought promptly. A complaint in inverse condemnation, even one which does not expressly attack the validity of the ordinance or its application, and seeks only compensation for an alleged taking, must be deemed a challenge to the local action. This follows because the constitutional validity of the governmental action if uncompensated must be determined in the course of ruling on the claim that compensation is owed. Moreover, the validity of the action must be determined to afford the local entity the opportunity to rescind its action rather than pay compensation for a taking. A landowner may not, by seeking only compensation, force a governmental agency to condemn the property.

Therefore, unless the complaint alleges that the existence of a taking has already been judicially established, the complaint necessarily states a cause of action which requires judicial review of a decision of the local legislative body concerning a subdivision or of the reasonableness, legality, or validity of any condition attached to a permit decision within the meaning of section 66499.37. An action which requires that review is governed by section 66499.37 regardless of the plaintiff's characterization of the cause of action.

Having reached that conclusion we shall affirm the judgment of the Court of Appeal.

## I

### EVENTS AND PROCEEDINGS BELOW

The complaint alleges that plaintiff purchased a 300-acre tract of land zoned for single-family residential use in 1978. In 1981, defendant City of

[1]Section 66499.37 provides: "Any action or proceeding to attack, review, set aside, void or annul the decision of an advisory agency, appeal board or legislative body concerning a subdivision, or of any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless such action or proceeding is commenced and service of summons effected within 90 days after the date of such decision. Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations. Any such proceeding shall take precedence over all matters of the calendar of the court except criminal, probate, eminent domain and forcible entry and unlawful detainer proceedings."

Glendale (Glendale) adopted an ordinance which prohibited construction on major ridge lines within the city.[2] The ordinance was enacted pursuant to authority granted by the Subdivision Map Act. Plaintiff was advised by city representatives that development would not be permitted on ridge lines on his property. A plan for the construction of 588 residential units on the property was approved on April 1, 1986, but that approval rejected all proposed use of, and any encroachment within, on, or over, the major ridge lines within the tract. Claiming that the ordinance on which this action was based precluded development of 40 percent of the tract, plaintiff initiated this action in inverse condemnation in September 1989. Glendale demurred, asserting the 90-day limitations period of section 66499.37. It also argued that plaintiff's failure to challenge the conditions placed on development of his land barred the inverse condemnation action. The trial court sustained the demurrer and entered judgment dismissing the action. Plaintiff appealed.[3]

The Court of Appeal affirmed the judgment of dismissal. The court held that the longer limitations period of Code of Civil Procedure section 338,

---

[2]It is undisputed that the ordinance was enacted pursuant to the authority granted by the Subdivision Map Act. Defendant has requested that this court take judicial notice both of this ordinance, No. 4533, and a predecessor ordinance enacted in 1971 which it amended, No. 3993. We grant that request and defendant's request that the court take judicial notice of certain other documents which defendant believes are relevant to the legislative history of section 66499.37 and subject to judicial notice under Evidence Code section 452. To the extent that the request seeks judicial notice of letters to the Governor from individual legislators and private persons reflecting their understanding of the purpose and effect of legislation creating special statutes of limitation for challenges to subdivision and zoning related decisions, the request is denied. (See *Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1157, fn. 6 [278 Cal.Rptr. 614, 805 P.2d 873].)

Section 28-2.1 of Ordinance No. 4533 provided in pertinent part:

"a. Intent and purpose. The city is experiencing unprecedented hillside subdivision development which without proper planning may destroy major ridge lines which are an exhaustible and precious scenic resource of the city and its citizens; it is necessary that subdivision developers include with their tentative tract maps, plans for the preservation of major ridge lines.

"b. Submission of plans. The tentative tract map and plans for any subdivision development which touches, crosses, includes or affects major ridge lines shall include plans for the complete preservation of such major ridge line areas in their natural state.

"c. Major ridge lines defined. . . . No engineered slopes, housing construction, streets, utilities, or other man-made features shall be permitted within identified major ridge line areas."

[3]Defendant asserts that plaintiff sold the property that is the subject of this action in 1986, long before he filed this action, complains that he failed to exhaust available administrative remedies and was permitted dense cluster development on the property, and argues that plaintiff should not be permitted to take advantage of the permit and subsequently challenge its conditions. While some or all of these claims might have been asserted in a demurrer or in defense of the action, we need not address them here since the sole ground for the demurrer was the applicability of section 66499.37.

For purposes of review of an order sustaining a demurrer to a complaint, we accept as true all material allegations of the complaint (*Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 7 [276

subdivision (j), and Code of Civil Procedure sections 318 and 319, which govern actions for damage to and taking of property, were not applicable to actions based on a decision made pursuant to an ordinance enacted under the authority of the Subdivision Map Act.

## II

### THE NATURE OF PLAINTIFF'S ACTION

Plaintiff argues that his action is one for a taking of his property, not a challenge to the city ordinance or to the actions taken on his application for a development permit. His position is, simply stated: The ridge-line acreage on which development is not permitted was taken by virtue of the enactment and/or application of the Glendale ordinance which forbids development on the land. Therefore, he is entitled to bring an action in inverse condemnation based on his inability to develop that portion of the property notwithstanding his failure to initiate a timely challenge to the permit condition or application of the ordinance to his property through a proceeding in mandamus.

The question is not answered that easily, however. Before considering which limitations period applies to this action, it is necessary to address plaintiff's argument that, as a matter of federal constitutional right, an action in inverse condemnation seeking damages for a permanent taking may be initiated in the first instance without a challenge to the application of the ordinance to the affected property.

A. *Fifth Amendment "Taking" Clause.*[4]

Because plaintiff relies in part on authority applicable to a taking of property which occurs when a public agency causes a physical invasion of private property, it is important to note that a "regulatory" taking differs. ██ "Where the government authorizes a physical occupation of property

---

Cal.Rptr. 303, 801 P.2d 1054]) and do not go beyond the face of the complaint and matters of which the trial court took judicial notice. (Evid. Code, § 459.) Defendant does not assert that the trial court was requested to and did take judicial notice of the events to which it alludes that are not alleged in the complaint.

[4]Plaintiff relies on both article I, section 19 of the California Constitution and the takings clause of the Fifth Amendment to the United States Constitution. He relies primarily on federal authority, however. While article I, section 19, protects a somewhat broader range of property values than does the Fifth Amendment takings clause (*Varjabedian* v. *City of Madera* (1977) 20 Cal.3d 285, 298 [142 Cal.Rptr. 429, 572 P.2d 43]), that distinction is irrelevant to the issues in this case. Our conclusion that the prerequisites to an inverse condemnation action arising out of a regulatory taking do not deny landowners any rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution applies equally to rights claimed under article I, section 19.

(or actually takes title), the Takings Clause generally requires compensation. [Citation.] But where the government merely regulates the use of property, compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." (*Yee* v. *City of Escondido* (1992) 503 U.S. 519 [118 L.Ed.2d 153, 162, 112 S.Ct. 1522, 1526].) An individualized assessment of the impact of the regulation on a particular parcel of property and its relation to a legitimate state interest is necessary in determining whether a regulatory restriction on property use constitutes a compensable taking. (See, e.g., *Dolan* v. *Tigard, Ore.* (1994) __ U.S. __ [129 L.Ed.2d 304, 114 S.Ct. 2309].)

Ignoring the distinction between a regulatory taking and takings by action which affects title or involves physical invasion, plaintiff contends that a landowner may not be required to exhaust state administrative and judicial remedies, and may sue directly on a constitutional just compensation cause of action. He relies for that assertion on both *Williamson Planning Comm'n* v. *Hamilton Bank* (1985) 473 U.S. 172 [87 L.Ed.2d 126, 105 S.Ct. 3108] and *First Lutheran Church* v. *Los Angeles* (1987) 482 U.S. 304 [96 L.Ed.2d 250, 107 S.Ct. 2378]. Neither case supports such a broad proposition. Rather than supporting plaintiff's claim that a taking occurs at the time an ordinance which restricts development is enacted, *Williamson Planning Comm'n* v. *Hamilton Bank, supra,* 473 U.S. 172, held that the landowner's claim was not ripe for adjudication. The court held, as it had done in earlier cases, that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." (*Id.,* at p. 186 [87 L.Ed.2d at p. 139].) In that case the court noted that no variance had been sought from either the planning commission or the administrative appellate body, the board of zoning appeals. The court emphasized that until there has been a "final, definitive position regarding" how the regulations will be applied to the land, a court cannot determine whether a compensable taking has occurred. (*Id.,* at p. 191 [87 L.Ed.2d at p. 141].) As an alternative ground for concluding that the claim was not ripe, the court noted that the landowner had not utilized state procedures for seeking compensation. "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." (*Id.,* at p. 195 [87 L.Ed.2d at p. 144].)

Far from supporting plaintiff's position therefore, the *Williamson* decision holds: (1) until a final administrative decision has been made, one which

affords the administrative agency and any reviewing body having similar authority the opportunity to amend the agency decision and/or grant a variance, whether a taking has occurred through application of a land-use regulation to specific property cannot be determined; and (2) a state may establish reasonable procedures by which taking claims are to be brought. Moreover, the responsible governmental entity has the option of exempting the property from the ordinance or regulation, or even repealing the ordinance as an alternative to paying compensation for a permanent taking if it is judicially determined, after administrative remedies have been exhausted, that application of the restrictions to the property will constitute a compensable taking.

*First Lutheran Church* v. *Los Angeles, supra,* 482 U.S. 304, offers no additional support for plaintiff's position. The question presented in that case was whether compensation must be paid for deprivation of use of property caused by an ordinance that is ultimately invalidated by the court. The Supreme Court held that a temporary taking must be compensated. In so doing, however, it cast no doubt on the right of a state to require that a landowner seeking compensation for permanent deprivation first seek a variance or invalidation of the ordinance or regulation as applied to the owner's property. The court held only that invalidation of an overly restrictive zoning ordinance is not a "sufficient remedy" (482 U.S. at p. 319 [96 L.Ed.2d at p. 267]) because it does not provide compensation for the temporary taking prior to invalidation.[5] It did not question invalidation as an adequate alternative to forcing the state to pay compensation for a permanent taking, however. Instead the court reaffirmed: "Nothing we say today is intended to abrogate the principle that the decision to exercise the power of eminent domain is a legislative function . . . . *Once a court determines that a taking has occurred, the government retains the whole range of options already available—amendment of the regulation, withdrawal of the invalidated regulation, or exercise of eminent domain.*" (*Id.,* at p. 321 [96 L.Ed.2d at pp. 267-268], italics added.)

The high court recently reaffirmed the continued availability of these options in *Lucas* v. *South Carolina Coastal Council* (1992) 505 U.S. __ [120 L.Ed.2d 798, 112 S.Ct. 2886]. There the court held that a regulation which denied a coastal owner the right to any construction on, or other beneficial use of, his property would constitute a compensable taking if, under state law, a right to develop the land existed prior to enactment of the challenged

---

[5]In holding that compensation must be paid for a temporary taking prior to the invalidation of the ordinance, the court was careful to point out that its holding did not address the problem of normal delays in the permit process. (482 U.S. at p. 321 [96 L.Ed.2d at pp. 267-268].)

regulation. Although the court remanded the matter to the state court to determine what rights had existed, the court also admonished: "*Of course, the State may elect to rescind its regulation and thereby avoid having to pay compensation for a permanent deprivation.*" (*Id.,* at p. \_\_, fn. 17 [120 L.Ed.2d at p. 822], italics added.)

Plaintiff seeks to deny the city these options. He claims that he need not seek a variance, exhaust administrative remedies, or give the city the opportunity to rescind the ordinance or exempt his property after obtaining a judicial determination that application of the ordinance to the property does effect a compensable taking. The authorities on which plaintiff relies do not support his thesis that the only precondition to a suit for compensation is administrative application of the ordinance restricting development of his property. He seeks to do what the high court says a landowner has no right to do—to force the city to exercise the power of eminent domain.

■ Moreover, not every land-use restriction which designates areas on which no development is permitted results in a compensable taking. The governing constitutional authority recognizes that the impact of a law or regulation as applied to a specific piece of property determines whether there has been a compensable taking. Compensation need not be paid unless the ordinance or regulation fails to serve an important governmental purpose or "goes too far" as applied to the specific property that is the object of the litigation. (*Pennsylvania Coal Co.* v. *Mahon* (1922) 260 U.S. 393, 415 [67 L.Ed. 322, 43 S.Ct. 158, 28 A.L.R. 1321].) The impact of a law or regulation on the owner's right to use or develop the property cannot be assessed until an administrative agency applies the ordinance or regulation to the property and a final administrative decision has been reached with regard to the availability of a variance or other means by which to exempt the property from the challenged restriction. A final administrative decision includes exhaustion of any available review mechanism. Utilization of available avenues of administrative relief is necessary because the court "cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes." (*MacDonald, Sommer & Frates* v. *Yolo County* (1986) 477 U.S. 340, 348 [91 L.Ed.2d 285, 293-294, 106 S.Ct. 2561], see also *Hodel* v. *Virginia Surface Mining & Recl. Assn.* (1981) 452 U.S. 264, 297 [69 L.Ed.2d 1, 29, 101 S.Ct. 2352]; *Long Beach Equities, Inc.* v. *County of Ventura* (1991) 231 Cal.App.3d 1016, 1032 [282 Cal.Rptr. 877]; *California Coastal Com.* v. *Superior Court* (1989) 210 Cal.App.3d 1488, 1500 [258 Cal.Rptr. 567].)

■ Plaintiff's complaint acknowledges that development has been permitted on part of his property, and thus concedes that the Glendale ordinance

did not deny him all economically feasible use of the property. We therefore reject both plaintiff's claim that a compensable taking of his property necessarily occurred when the Glendale ridge-line ordinance was enacted because development was limited to less than all of the property and his argument that he need not pursue administrative and judicial remedies as a prerequisite to a suit in inverse condemnation. He may not avoid these steps and compel the defendant to purchase the undeveloped portion of his property by electing to seek only compensation in an inverse condemnation action.

B.   *California Administrative and Judicial Remedies.*

■   The Fifth Amendment to the United States Constitution conditions the state's right to take private property for public use on the payment of "just compensation." It leaves to the state, however, the procedures by which compensation may be sought. "If the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner has no claim against the Government for a taking." (*Williamson Planning Comm'n* v. *Hamilton Bank*, *supra*, 473 U.S. 172, 194-195 [87 L.Ed.2d 126, 143-144]; see also *Preseault* v. *ICC* (1990) 494 U.S. 1, 11 [108 L.Ed.2d 1, 13-14, 110 S.Ct. 914].)

California provides such a process by making available an action for inverse condemnation if, after exhausting administrative remedies to free the property from the limits placed on development and obtaining a judicial determination that just compensation is due, any restrictions for which compensation must otherwise be paid are not lifted. In that action the court determines whether the restriction on development "goes too far" and will be constitutionally impermissible unless just compensation is paid for the taking brought about by the restriction.

When property is damaged, or a physical invasion has taken place, an inverse condemnation action may be brought immediately because an irrevocable taking has already occurred. ■   If the alleged taking is a "regulatory taking," i.e., one that results from the application of zoning laws or regulations which limit development of real property, however, the owner must afford the state the opportunity to rescind the ordinance or regulation or to exempt the property from the allegedly invalid development restriction once it has been judicially determined that the proposed application of the ordinance to the property will constitute a compensable taking. The owner may do so, where appropriate, by a facial challenge to the ordinance, but in most cases must seek a variance if that relief is available and then exhaust other administrative and judicial remedies. The facial challenge may be

through an action for declaratory relief (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 273 [157 Cal.Rptr. 372, 598 P.2d 25]). The latter, an "as applied" challenge to the development restrictions imposed by the administrative agency, may be properly made in a petition for writ of "administrative" mandamus to review the final administrative decision (Code Civ. Proc., § 1094.5) and that action may be joined with one for inverse condemnation. A declaratory relief action also may be joined with an action in inverse condemnation. (*State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 251 [115 Cal.Rptr. 497, 524 P.2d 1281].) Damages for the "taking" may be sought in an administrative mandamus action (Code Civ. Proc., § 1095), or, if the plaintiff seeks a jury trial, in the joined inverse condemnation action. (*Patrick Media Group, Inc.* v. *California Coastal Com.* (1992) 9 Cal.App.4th 592, 614 [11 Cal.Rptr.2d 824]; *Rossco Holdings, Inc.* v. *State of California* (1989) 212 Cal.App.3d 642, 660 [260 Cal.Rptr. 736]; *California Coastal Com.* v. *Superior Court, supra*, 210 Cal.App.3d 1488, 1494.)[6] The owner "may not, however, elect to sue in inverse condemnation and thereby transmute an excessive use of the police power into a lawful taking for which compensation in eminent domain must be paid." (*Agins* v. *City of Tiburon, supra*, 24 Cal.3d 266, 273.) Compensation must be paid for a permanent taking only if there has been a final judicial determination that application of the ordinance or regulation to the property is statutorily permissible and constitutes a compensable taking. Even then the state or local entity has the option of rescinding its action in order to avoid paying compensation for a permanent taking.

Plaintiff argues that it is unreasonable and constitutionally impermissible to require a landowner to pursue these remedies. He argues that it is unreasonable because the owner must bear the expense of, and suffer the delays attendant on, an administrative proceeding, judicial review in a mandamus proceeding, and an inverse condemnation proceeding. He argues it is constitutionally impermissible because the owner may not exercise the right to jury trial in a mandate proceeding.

We are not persuaded. As noted above, the inverse condemnation proceeding may be joined with the petition for writ of mandate. Thus, there is no

---

[6]Plaintiff's belief to the contrary notwithstanding, this court did not hold in *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508 [125 Cal.Rptr. 365, 542 P.2d 237] that damages for a taking of property could not be sought in a mandamus action. We held that the plaintiff could not add a tort claim for damage predicated on acts for which the Government Code provides immunity, as for injury caused by adopting or failing to adopt an enactment. (See Gov. Code, § 818.2.) In that case we had explained that the plaintiff, who alleged that the value of his property had decreased as a result of the adoption of a zoning ordinance, had not stated a taking claim. (15 Cal.3d at p. 518.) We did not hold, nor could we, consistent with the takings clause of the Fifth Amendment to the United States Constitution and article I, section 19 of the California Constitution, that the Legislature may immunize the state or a local agency from liability for a taking.

extended delay, and, as the court held in *First Lutheran Church* v. *Los Angeles, supra,* 482 U.S. 304, the landowner is entitled to damages for any loss of use of the property beyond that to be expected as part of the normal permit process. Moreover, the expense of a meritorious taking claim will not be borne by the owner. Not only are damages for a temporary taking available, but the owner's reasonable costs and attorney fees must be reimbursed by the local entity if the owner establishes that the restriction on land use is a compensable taking. (Code Civ. Proc., § 1036; *Locklin* v. *City of Lafayette* (1994) 7 Cal.4th 327, 375-377 [27 Cal.Rptr.2d 613, 867 P.2d 724]; *Greater Westchester Homeowners Assn.* v. *City of Los Angeles* (1979) 26 Cal.3d 86, 104 [160 Cal.Rptr. 733, 603 P.2d 1329]; *In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 71 [37 Cal.Rptr. 74, 389 P.2d 538].)

In some cases, all of the evidence necessary to establish a taking claim may have been presented in the administrative proceeding. If it was not possible for the landowner to present that evidence, it may be introduced in the mandate proceeding. Subdivision (e) of Code of Civil Procedure section 1094.5 permits the introduction of additional evidence that is relevant to a challenge to the administrative action if the evidence "could not have been produced or . . . was improperly excluded at the hearing before" the administrative agency. Thus, the trial court is able to resolve the taking claim in the mandate proceeding.

■ A landowner is, as plaintiff argues, entitled to a jury trial in an inverse condemnation action. Article I, section 19 of the California Constitution provides: "Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner." Therefore, the right to jury trial applies in inverse condemnation actions, but that right is limited to the question of damages. (*Highland Realty Co.* v. *City of San Rafael* (1956) 46 Cal.2d 669, 683 [298 P.2d 15]; *People* v. *Ricciardi* (1943) 23 Cal.2d 390, 402 [144 P.2d 799]; *Contra Costa County Flood Control etc. Dist.* v. *Lone Tree Investments* (1992) 7 Cal.App.4th 930, 936 [9 Cal.Rptr.2d 326].)

■ A property owner is, of course, entitled to a judicial determination of whether the agency action constitutes a taking. (*Healing* v. *California Coastal Com.* (1994) 22 Cal.App.4th 1158, 1174 [27 Cal.Rptr.2d 758].) Administrative adjudication in the course of exercising an administrative agency's regulatory power, if subject to judicial review, does not deny participants their right to judicial determination of their rights. (*McHugh* v. *Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 374-375 [261 Cal.Rptr. 318, 777 P.2d 91].) We agree with the *Healing* court, however, that

an administrative agency is not competent to decide whether its own action constitutes a taking and, in many cases, administrative mandate proceedings are not an adequate forum in which to try a takings claim.

If the administrative hearing is not one in which the landowner has a full and fair opportunity to present evidence relevant to the taking issue, one in which witnesses may be sworn, and testimony presented by means of direct and cross-examination, the administrative record is not an adequate basis on which to determine if the challenged action constitutes a taking. (*Healing* v. *California Coastal Com.*, *supra*, 22 Cal.App.4th 1158, 1170.) A judicial determination is available in the mandate proceeding, however, if the administrative action is challenged on the basis that it is a compensable taking, the hearing did permit full litigation of the facts relevant to the takings issue, and any additional issues are litigated before the court. Because a taking of property is alleged, the court must accord the owner de novo review of the evidence before the agency in ruling on the taking claim (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34-44 [112 Cal.Rptr. 805, 520 P.2d 29]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 140 [93 Cal.Rptr. 234, 481 P.2d 242]) and consider any additional evidence admitted at the hearing on the petition for writ of mandate.

If the owner believes the hearing before the administrative agency was not adequate, the owner is assured a full and fair hearing by exercising his right to join an inverse condemnation action with the mandate proceeding. In the inverse condemnation proceeding the owner may both litigate the taking claim, and, if successful, assert the right to jury trial guaranteed by article I, section 19 of the California Constitution. The availability of these procedures satisfies the requirement that a state provide an adequate process for obtaining compensation when property is taken for public use.

Nor does the imposition on the property owner of the requirement that administrative remedies be exhausted as a prerequisite to an inverse condemnation action impermissibly deny the owner the right to compensation as a "preferred remedy."[7] The "preferred remedy" to which plaintiff claims a right is not one recognized as part of constitutional takings jurisprudence.

---

[7]Plaintiff's suggestion that *Preseault* v. *ICC*, *supra*, 494 U.S. 1, 12 [108 L.Ed.2d 1, 14] makes a suit in inverse condemnation the remedy of "first instance" lacks merit. *Preseault* dealt with a claim that title to property had been taken pursuant to federal action and construed federal statutory law which created a claims procedure which, the court held, had to be followed before an attack on the regulation which resulted in the alleged taking could be pursued. *Hurley* v. *Kincaid* (1932) 285 U.S. 95 [76 L.Ed. 637, 52 S.Ct. 267] also involved only federal law. The court held there that the plaintiff could not sue to enjoin operation of a federal flood control project which caused occasional flooding of plaintiff's land as Congress had provided a remedy by which compensation would be paid for such damage. *Ruckelshaus*

The decisions in which he finds this preference are simply applications of federal law. They hold that in situations in which Congress has not withdrawn from the Court of Claims the jurisdiction conferred by the Tucker Act (28 U.S.C. § 1491(a)(1)) over claims for damages founded on, inter alia, the United States Constitution, it is improper to enjoin operation or enforcement of a federal statute on the ground that such enforcement might bring about a compensable taking. Those decisions say nothing about the power of a state to reserve the right to rescind a statute or ordinance, or to exempt property from its scope, if it is determined that enforcement of the statute will result in a compensable taking.

In *United States* v. *Riverside Bayview Homes, Inc.* (1985) 474 U.S. 121 [88 L.Ed.2d 419, 106 S.Ct. 455], for instance, the court held that it was improper to enjoin enforcement of a federal statute which required a permit for discharging fill into protected wetlands. The court reiterated the well-established proposition that if compensation is available when property is in fact taken, the governmental action is not unconstitutional. (474 U.S. at p. 128 [88 L.Ed.2d at p. 427].) However, the court pointed out, the permit requirement itself did not take any land, and, if a permit were to be denied with the result that no economically feasible use could be made of the property, federal law provided a means of obtaining compensation for any taking that might occur. For that reason it was premature to seek an injunction.

Far from supporting plaintiff, this case confirms that when restrictions on use of real property are the basis for a taking claim, the owner must pursue any available administrative permit process before seeking compensation or challenging the statute or regulation. The California permit process includes both administrative and judicial review of any conditions to which the landowner objects. Only when the review process has been completed is it possible to determine whether a taking has occurred. Nothing in the high court's holding that an injunction against enforcement of the law or regulation which requires a permit is premature, suggests that compensation must

v. *Monsanto Co.* (1983) 463 U.S. 1315 [77 L.Ed.2d 1417, 104 S.Ct. 3] is not an opinion of the court. It is an in-chambers opinion of Justice Blackmun denying a stay pending appeal from an injunction against enforcement of provisions of a federal pesticide regulation statute under which trade secrets might be disclosed. Not only is there no "holding" to the effect that inverse condemnation rather than specific relief is the proper remedy, there is no discussion of that topic. The court's actual holding in *Ruckleshaus* v. *Monsanto Co.* (1984) 467 U.S. 986 [81 L.Ed.2d 815, 104 S.Ct. 2862] offers no support for plaintiff's position. Again, the court applied federal law, holding that because a federal claims procedure was available to provide just compensation if trade secrets had been disclosed, it was improper to enjoin actions the administrative agency took under the pesticide law. The case had nothing to do with regulatory taking of real property or state procedural prerequisites to inverse condemnation actions, and did not create a federal, constitutionally mandated, right to seek monetary compensation in lieu of other remedies.

be paid immediately upon either enactment of the statute or issuance of a permit with restrictions on development.

The other cases on which plaintiff relies also involve attempts to enjoin enforcement of a federal statute and are no more supportive. *Dames & Moore* v. *Regan* (1981) 453 U.S. 654 [69 L.Ed.2d 918, 101 S.Ct. 2972] held only that if a presidential order suspending claims against Iran were to effect a taking of the plaintiff's property, the "treaty exception" to the jurisdiction of the United States Court of Claims would not bar a claim for compensation. *Regional Rail Reorganization Act Cases* (1974) 419 U.S. 102 [42 L.Ed.2d 320, 95 S.Ct. 335] held that because the Regional Rail Reorganization Act of 1973 (45 U.S.C. § 701 et seq.) had not withdrawn jurisdiction from the United States Court of Claims, an adequate remedy existed for any taking that might result. The district court erred therefore in declaring the act unconstitutional and enjoining its enforcement. In *Dugan* v. *Rank* (1963) 372 U.S. 609 [10 L.Ed.2d 15, 83 S.Ct. 999], claimants to water rights attempted to enjoin storing and diversion of water as part of a federal Bureau of Reclamation project. The court held that their remedy, if valid rights were interfered with or partially taken, was a suit for damages. Finally, *U.S.* v. *Gerlach Live Stock Co.* (1950) 339 U.S. 725 [94 L.Ed. 1231, 70 S.Ct. 955, 20 A.L.R.2d 633] affirmed a United States Court of Claims judgment awarding compensation for a taking of riparian rights, noting that the absence of equitable remedies did not mean that no right was available. The rule on which plaintiff would rely, that the adequacy of a damage remedy is usually grounds for denying equitable remedies, was invoked by the court. It did so, however, with respect to the alternatives of specific performance, mandatory order, and injunctions. (*Id.*, at p. 752 [94 L.Ed.2d at pp. 1249-1250].) The court did not address the right of a state to enforce procedures by which the state or local governmental entity may determine whether its actions will effect a taking, and, if so, to opt to withdraw the objectionable restrictions on development.

The disparity in resources between the federal government and local governmental entities both explains and justifies the state procedure. The likelihood that the impact of a federal regulatory statute may effect a taking of property of such value as to threaten the federal treasury with insolvency is remote. Congress has determined that providing a damage remedy for those cases in which a taking occurs will not cause undue hardship. Few local governments could afford the financial impact of a decision that a

widely applicable zoning or regulatory ordinance brought about a taking of all affected property.[8]

The California procedural requirements to which plaintiff objects do no more than ensure to the state its right to a prepayment judicial determination that the ordinance or regulation is excessive and will constitute a taking, thus affording the state the option of abandoning the ordinance, regulation, or challenged action, or exempting parcels from its scope if the regulation on use is excessive. As we noted above, the United States Supreme Court has recognized repeatedly the right of the state to reserve the option of rescinding a statute that imposes excessive regulation, and has reaffirmed the principle that a landowner may not compel the state to initiate an eminent domain action. These requirements extend that principle to the inverse condemnation context.

Plaintiff's action is not a claim against the federal government. It is not governed by the federal authority on which plaintiff relies. ■ A California landowner, who believes that application of a state statute or local ordinance limiting development of the owner's property works a taking, may not bypass the remedies the state has made available to avoid the taking. If he does so, the state may deem the owner to have waived the "taking" claim. (*County of Imperial* v. *McDougal* (1977) 19 Cal.3d 505, 510-511 [138 Cal.Rptr. 472, 564 P.2d 14]; *Rossco Holdings, Inc.* v. *State of California, supra*, 212 Cal.App.3d 642, 654.)

"If the conditions imposed by the city in the[] permit were invalid, Code of Civil Procedure section 1094.5 provided plaintiffs with the right and procedures to eliminate them. *By declining to avail themselves of those procedures, plaintiffs cannot convert that right into a cause of action in inverse condemnation.*" (*Pfeiffer* v. *City of La Mesa* (1977) 69 Cal.App.3d 74, 78 [137 Cal.Rptr. 804], italics added.)[9] As the *Pfeiffer* court observed, if a landowner could do so, "complete chaos would result in the administration of this important aspect of municipal affairs." (69 Cal.App.3d at p. 78.)

---

[8]The prayer in plaintiff's complaint sought damages of $10 million for the alleged taking of his property alone.

[9]Contrary to plaintiff's assertion, *Pfeiffer* v. *City of La Mesa, supra*, 69 Cal.App.3d 74, was not "nullified" by *Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914 [218 Cal.Rptr. 839], which cited the case with approval, but distinguished it. The Legislature has now codified the rule that one who accepts the benefits of a permit may not later challenge conditions imposed on or in the permit. Government Code section 66020 creates a limited exception under which a residential housing developer may challenge a permit condition such as that in issue here while proceeding with development. That section, enacted in 1990, permits a protest if the developer provides evidence of arrangements made to ensure performance of the condition if it is upheld. The developer must also serve notice of the protest on the agency and the protest must be filed at the time the condition is approved

In the face of case law which unanimously and repeatedly has rejected his arguments, plaintiff, and amicus curiae Pacific Legal Foundation, cite only *Golden Cheese Co. v. Voss* (1991) 230 Cal.App.3d 727 [281 Cal.Rptr. 602] (*Golden Cheese II*) as California authority for maintaining an inverse condemnation action without seeking exemption from a restrictive administrative regulation, and, if unsuccessful, seeking a judicial determination that application of the law or regulation will effect a constitutionally impermissible taking if compensation is not paid. The case does not support petitioner. The case did not involve land-use regulation and the administrative and judicial remedies which are available to, and must be exhausted by, landowners who claim that such regulation effects a taking.

The court did state in *Golden Cheese II* that the plaintiff in that case could state an inverse condemnation cause of action without challenging the validity of the administrative order in issue there. However, plaintiff overlooks both the context of that statement and the fact that a complaint challenging the validity of the order had been filed with the inverse condemnation complaint.

*Golden Cheese II*, on which plaintiff relies, followed the decision of the Court of Appeal in *Golden Cheese Co. v. Voss* (1991) 230 Cal.App.3d 547 [281 Cal.Rptr. 587] (*Golden Cheese I*), a companion case in which the trial court had upheld the validity of a milk marketing plan. The Court of Appeal had affirmed the judgment which denied a petition for writ of mandate. The challenged plan fixed the minimum price for milk used for cheese. The court held that the order was a valid exercise of the discretion given to the director by the Milk Stabilization Act (Food & Agr. Code, § 61801 et seq.). The new formula for pricing the milk, which the trial court and the Court of Appeal upheld, included a manufacturing cost allowance. The Director of the Department of Food and Agriculture found that Golden Cheese was one of the three highest-cost plants, and was not reasonably efficient. The formula adopted did not accommodate the costs of manufacturing in the Golden Cheese plant and, as a result, did not permit Golden Cheese to pass on all of the costs of milk. The Court of Appeal nonetheless upheld the formula.

*Golden Cheese II* was an appeal from a judgment for defendant entered after the trial court sustained without leave to amend a demurrer to an

---

or within 90 days after it is imposed and initiate a legal action to review or attack the condition within 180 days after the date of imposition.

The Legislature otherwise indicated approval of and codified the *Pfeiffer* rule in subdivision (d) of Government Code section 66020, a provision which denies any further review rights if the procedures outlined in the statute are not followed: "Thereafter, notwithstanding any other law to the contrary, all persons are barred from any action or proceeding or any defense of invalidity or unreasonableness of the imposition."

inverse condemnation complaint. In the inverse condemnation action, the company claimed that the price fixing order and a conclusion of the Director of the Department of Food and Agriculture that operation of the Golden Cheese plant was contrary to the economic health of the dairy industry brought about a regulatory taking of its business. Golden Cheese based its taking argument on allegations that the director's actions did not allow it to recover its costs and destroyed any viable economic interest it had in its plant and property. The trial court sustained a demurrer without leave to amend on the ground that the plaintiff did not challenge the validity of the marketing order. The Court of Appeal concluded that this was error because the action challenged the marketing order as applied. Therefore, the court reasoned, Golden Cheese had stated or could state an "as applied" cause of action in inverse condemnation without alleging the invalidity of the director's order.

There is nothing remarkable in that conclusion. An otherwise valid statute or regulation may be invalid as applied to a particular property if compensation is not paid. The Court of Appeal noted that the validity of the order had been challenged in the companion case, and that the action did not involve regulation of real property. Nothing in the opinion suggests that the demurrer to the Golden Cheese complaint asserted a procedural bar to the action based on failure to exhaust available administrative and judicial remedies. And, of course, the case did not involve any issue with respect to a statute of limitations.

Moreover, the actual holding in *Golden Cheese II* was that the holding in *Golden Cheese I* was res judicata on the question of whether the pricing formula was reasonable. Because it was, Golden Cheese had no reasonable investment-backed expectations to any particular milk price level, and there had been no taking of its property. *Golden Cheese II* thus offers no support for plaintiff's argument that he may bypass proper administrative and judicial remedies, and avoid an expressly applicable statute of limitations, when the alleged regulatory taking occurs through application of ordinances adopted pursuant to the Subdivision Map Act.

C. *The Applicable Statute of Limitations.*

Relying on his theory that an inverse condemnation action may be pursued without seeking administrative relief from the land-use regulation which restricts development, followed by judicial review of the final administrative decision, plaintiff argues that the Court of Appeal erred in rejecting his claim that application of the Glendale ordinance to his property was a "continuous wrong" for which a new cause of action arises each day the city

fails to compensate him. He contends that this must be the rule or property owners cannot know the point in time at which the taking occurs and the statute of limitations commences running.

The Court of Appeal did not err in this respect. If the challenge is to the facial validity of a land-use regulation, the statute of limitations runs from the date the statute becomes effective. Government Code section 65009 establishes a 120-day period of limitation for such actions.[10] By contrast, if the challenge is to the application of the regulation to a specific piece of property, the statute of limitations for initiating a judicial challenge to the administrative action runs from the date of the final adjudicatory administrative decision.[11] Government Code section 66499.37 establishes a 90-day period of limitation for these actions. Thus, there is no uncertainty regarding the commencement of the period. Whether the complaint is deemed a facial challenge or an applied challenge, it is untimely.

*Stone* v. *City of Los Angeles* (1975) 51 Cal.App.3d 987 [124 Cal.Rptr. 822], on which plaintiff relies for his argument that he has suffered a continuous wrong, does not support that claim. *Stone* was an action for loss of use of property caused by precondemnation delays after the defendant city had announced its intent to condemn the property. The Court of Appeal was not dealing with a taking which, allegedly, was complete at the time the action was filed.

Plaintiff argues alternatively that Code of Civil Procedure sections 318, 319, or 338 apply. They do not. They are applicable only if no "different limitation is prescribed by statute." (Code Civ. Proc., § 312.) Government Code section 66499.37 is a "different limitation" which now governs actions in which such issues are raised.

■ To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the "gravamen" of the cause of action. (*Leeper* v. *Beltrami* (1959) 53 Cal.2d 195,

---

[10]Government Code section 65009, subdivision (c): "Except as provided in subdivision (d), no action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 120 days after the legislative body's decision:

" . . . . . . . . . . . . . . . . . . . . . .

"(2) To attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a zoning ordinance."

[11]When that decision involves approval of a subdivision map, the "final administrative decision is the final administrative action approving or rejecting the tentative map, an adjudicatory decision," since approval of a final map which substantially complies with the previously approved tentative map is a mandatory ministerial act. (Gov. Code, § 66474.1; *Griffis* v. *County of Mono* (1985) 163 Cal.App.3d 414, 426-427 [209 Cal.Rptr. 519]; *Soderling* v. *City of Santa Monica* (1983) 142 Cal.App.3d 501, 506 [191 Cal.Rptr. 140].)

214 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803]; *San Filippo* v. *Griffiths* (1975) 51 Cal.App.3d 640, 645 [124 Cal.Rptr. 399].) "[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code." (*Maguire* v. *Hibernia S.& L. Soc.* (1944) 23 Cal.2d 719, 733 [146 P.2d 673, 151 A.L.R. 1062].)

"The 'patent legislative objective' of [section 66499.37] is to ensure that judicial resolution of Subdivision Map Act disputes occurs 'as expeditiously as is consistent with the requirements of due process of law.'" (*Hunt* v. *County of Shasta* (1990) 225 Cal.App.3d 432, 442 [275 Cal.Rptr. 113].) ▮▮▮ As the Court of Appeal recognized here and in *Hunt*, section 66499.37 applies by its terms to *any* action involving a controversy over or arising out of the Subdivision Map Act. Therefore, if this is a claim arising out of application of a land-use regulation authorized by that act, section 66499.37 applies. Plaintiff seeks to avoid application of section 66499.37 by arguing he does not challenge the validity of the Glendale ordinance. He seeks only compensation for the taking he alleges was effected by the ordinance. He contends on that basis that the statutes of limitation found in the Code of Civil Procedure govern this action. We disagree.

Relying on *Baker* v. *Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 867 [218 Cal.Rptr. 293, 705 P.2d 866], plaintiff asserts that the five-year period of limitation established by Code of Civil Procedure sections 318 and 319 applies to this action.

*Baker, supra,* 39 Cal.3d 862, did not involve a limitation on development, however. There the action was one for an alleged continuing nuisance caused by noise, smoke, and vibration from aircraft taking off and landing at defendants' nearby airport. The court deemed the gravamen of the cause of action to be one for an invasion of the plaintiffs property, and on that basis concluded that the five-year statute of limitations of Code of Civil Procedure sections 318 and 319 applied.

The court did not hold in *Baker* that all actions styled by the plaintiff as actions for inverse condemnation are subject to the five-year statute of limitations. In ruling that the five-year statute applied to that action it relied on *Frustuck* v. *City of Fairfax* (1963) 212 Cal.App.2d 345, 374 [28 Cal.Rptr. 357]. In *Frustuck,* an inverse condemnation action was based on a physical invasion of the plaintiff's property by defendant city, whose agents enlarged a drainage ditch on the property and created a berm by piling up dirt, debris, rock and other material on the property. In concluding that the five-year statute applied, rather than the three-year statute for trespass, the Court of Appeal reasoned that the area in issue had been taken for public use. Unlike

the present action, both *Baker* and *Frustuck* were actions based on physical invasion of the property.

There is no basis for a conclusion that Code of Civil Procedure sections 318, 319, or 338 govern this action, therefore. The complaint does not allege facts to establish that title to the land was affected by enactment of the ordinance or that a physical invasion of the land took place.

Assuming, arguendo, that plaintiff's complaint alleges facts adequate to establish a taking of 40 percent of his property either by virtue of the enactment of the ridge line ordinance or by the restrictions administratively imposed on development under the authority of the ordinance, the complaint is untimely.[12] If this action were deemed a facial challenge to the Glendale ordinance predicated on a theory that the mere enactment of the Glendale ordinance worked a taking of plaintiff's property, it would be untimely even under *Frustuck* as the complaint was filed more than five years after the ordinance was enacted. Moreover, as the State of California points out in its amicus curiae brief, since *Frustuck* was decided the Legislature has adopted not only section 66499.37, but also section 65009, a 120-day statute of limitations specific to challenges to the facial validity of zoning ordinances.[13]

When the gravamen of the cause of action is a claim that a land-use ordinance or regulation enacted under the authority of the Subdivision Map Act, or administrative actions taken pursuant to such an ordinance or regulation, has had the effect of "taking" the plaintiff's property without compensation, the action necessarily challenges the validity either of the ordinance or regulation or of the acts taken by the local agency or appeal board pursuant to the ordinance or regulation. This follows because, as we have explained above, only if the ordinance or regulation would be invalid on its

---

[12]The state, appearing as amicus curiae, argues that an ordinance or regulation which purports to deny affected property owners any economically feasible use of property without provision for compensation is invalid. The basis for this argument is that article I, section 19 of the California Constitution requires that compensation be paid for any taking. It follows, the state argues, that an owner may not compel the government to compensate the owner for action purportedly taken under an invalid statute. We agree that if an ordinance reflected legislative intent to take property in this manner and did not include a provision for compensation it would be invalid. It is unlikely that an ordinance which merely regulates the use of property would reflect such an intent, however. The state's argument does not acknowledge the possibility that a zoning or land-use ordinance or regulation which makes no provision for payment of compensation may be invalid as applied to one or more parcels within the overall area subject to the ordinance or regulation, but valid as to others.

[13]Section 66499.37 was amended in 1980 to reduce the limitations period from 180 days to 90 days. Elsewhere in that legislation the Legislature explained that changes in the law were needed to expedite the permit process and thereby encourage the development of new housing. (Stats. 1980, ch. 1152, § 10 et seq., p. 3796; see now Gov. Code, § 65913.)

face or as applied unless compensation is paid to an affected landowner is a claim in inverse condemnation meritorious. Therefore, the constitutional validity of the ordinance as it affects the plaintiff's property must be litigated in any inverse condemnation action which does not allege that a taking has already been judicially established.

Section 66499.37 mandates that: "*Any* action or proceeding *to attack, review, . . . the decision of an advisory agency, appeal board or legislative body concerning a subdivision, . . .* or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless such action or proceeding is commenced and service of summons effected within 90 days after the date of such decision. Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations." (Italics added.)

This section is not, as plaintiff argues, limited to actions for specific relief. It includes actions for compensation for a regulatory taking because the validity of the ordinance or its application to the plaintiff's property, if uncompensated, must be determined in the action—i.e., the court must determine if there has been a taking. Before he or she is entitled to any relief, either compensation or exemption of the property from the development restriction, the plaintiff must establish that the ordinance, regulation, or administrative action is not lawful or constitutionally valid if no compensation is paid. The action therefore comes within the broad language of section 66499.37.

Had plaintiff exhausted his administrative remedies by first seeking a variance and pursuing an administrative appeal challenging the permit conditions, and made his claim that the administrative actions constituted a taking in a petition for writ of mandate seeking review of the agency action filed pursuant to Code of Civil Procedure section 1094.5,[14] the application of section 66499.37 could not be questioned. His action would be one to attack a decision of an appeal board, or, if no administrative appeal is available under the Glendale ordinance, an action of the administrative agency, concerning a subdivision, and the act done prior to that decision. It would clearly be an action to determine the validity of the permit conditions.[15] A plaintiff may not avoid the application of section 66499.37 by electing to

---

[14]See *South Coast Regional Com.* v. *Gordon* (1977) 18 Cal.3d 832 [135 Cal.Rptr. 781, 558 P.2d 867]; *State of California* v. *Superior Court, supra,* 12 Cal.3d 237; *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715] ("[T]he rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.").

[15]Glendale might have demurred on the basis that plaintiff failed to state a cause of action, the omission being the absence of allegations that administrative remedies had been exhausted

forego raising his claim in the administrative mandamus proceeding in which the owner must exhaust administrative remedies for an erroneous, excessive, or unreasonable restriction on development. If the taking claim is not asserted in that proceeding, the challenge to the validity of the administrative action must be resolved in the inverse condemnation action in order to determine if compensation is due, and to allow the administrative agency or local government the opportunity to rescind the land-use restriction or its application to the plaintiff's property. A court cannot determine that compensation is due on allegations like those of plaintiff's complaint without determining if the development restriction is a taking. It must, necessarily, rule on the validity of the ordinance, regulation, or administrative act under which development is restricted.

In sum, when there has been no prior determination that the plaintiff's property has been taken by virtue of governmental action authorized by the Subdivision Map Act, a court hearing an inverse condemnation action based on that action must determine whether, on its face or as applied, the ordinance or regulation would be invalid if the property owner is not compensated for the claimed taking.

The gravamen of plaintiff's cause of action is therefore a claim that the Glendale ordinance is invalid on its face or as applied because, through the authority of that ordinance and/or regulations enacted under it, the city has taken his property without compensation. Plaintiff cannot transform the action into one which does not challenge the validity of the ordinance, regulations, and administrative actions by acquiescing in the taking, assuming the validity of those actions, and seeking only damages. The election is not his, but the city's. Under a cause of action such as that stated by the complaint in this case, regardless of the title attached to the cause of action or the remedy sought, the plaintiff must prove that the ordinance and regulations as applied have worked a "taking" of the plaintiff's property and that the plaintiff has not been compensated.

Viewed from this perspective it is apparent that section 66499.37 governs the time within which this action should have been initiated. Both the statutory language and the legislative history of the section lead to a conclusion that this section, not Code of Civil Procedure section 318 or section 319, is applicable.

Every appellate decision which has considered the issue in a case involving a controversy related to a subdivision has held that section 66499.37 is

---

or to establish an exception to that requirement. (See *Hittle* v. *Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 384 [216 Cal.Rptr. 733, 703 P.2d 73]; *County of Contra Costa* v. *State of California* (1986) 177 Cal.App.3d 62 [222 Cal.Rptr. 750].)

applicable no matter what the form of the action. (See *Presenting Jamul* v. *Board of Supervisors* (1991) 231 Cal.App.3d 665 [282 Cal.Rptr. 564] [declaratory relief action challenging denial of request to toll expiration date of tentative subdivision map]; *Hunt* v. *County of Shasta, supra,* 225 Cal.App.3d 432, 442 [action for declaratory relief that subdivision parcels complied with Subdivision Map Act and mandate to compel issuance of certificate of compliance]; *Griffis* v. *County of Mono, supra,* 163 Cal.App.3d 414 [action challenging approval of final subdivision map]; *Kirk* v. *County of San Luis Obispo* (1984) 156 Cal.App.3d 453 [202 Cal.Rptr. 606] [action to compel issuance of certificate of compliance with Subdivision Map Act]; *Soderling* v. *City of Santa Monica, supra,* 142 Cal.App.3d 501 [mandate to compel city to approve final subdivision maps]; *Resource Defense Fund* v. *County of Santa Cruz* (1982) 133 Cal.App.3d 800 [184 Cal.Rptr. 371] [action for mandamus and injunctive relief challenging county's approval of land division]; *Camp* v. *Board of Supervisors* (1981) 123 Cal.App.3d 334 [176 Cal.Rptr. 620] [consolidated mandate and declaratory relief actions challenging approval of tentative maps for two subdivisions]; *Kriebel* v. *City Council* (1980) 112 Cal.App.3d 693 [169 Cal.Rptr. 342] [mandate challenging action approving neighboring residential development]; *Timberidge Enterprises, Inc.* v. *City of Santa Rosa* (1978) 86 Cal.App.3d 873, 886 [150 Cal.Rptr. 606] [action to invalidate resolution permitting imposition of school impact fee condition on building permits and to recover fees].)

As the court held in *Timberidge Enterprises, Inc.* v. *City of Santa Rosa, supra,* 86 Cal.App.3d 873, 886, the "clear language" of section 66499.37 "manifests a legislative purpose that a *decision* such as that of the City, approving a subdivision map and attaching a *condition* thereto, shall be judicially attacked within [the limitation period of section 66499.37], or not at all." (Original italics.)

The purpose of statutes and rules which require that attacks on land-use decisions be brought by petitions for administrative mandamus, and create relatively short limitation periods for those actions, and actions which challenge the validity of land use statutes, regulations, and/or decisions, is to permit and promote sound fiscal planning by state and local governmental entities. As the Court of Appeal explained in *Patrick Media Group, Inc.* v. *California Coastal Com., supra,* 9 Cal.App.4th 592, 612: "The requirement that challenges to administrative actions constituting takings be brought initially by administrative mandamus assures that the administrative agency will have the alternative of changing a decision for which compensation might be required. If no such early opportunity were given, and instead, persons were permitted to stand by in the face of administrative actions alleged to be injurious or confiscatory, and three or five years later, claim monetary compensation on the theory that the administrative action resulted

in a taking for public use, meaningful governmental fiscal planning would become impossible."

And, as the court observed in *California Coastal Com.* v. *Superior Court (Ham), supra,* 210 Cal.App.3d 1488, 1496, if an owner were permitted to bypass the administrative mandamus remedy and delay initiating an inverse condemnation action for almost five years "[i]n given cases and certainly in the aggregate, the financial burden on the state could be overwhelming." Although the 90-day limitation period is short, it is, as was the 60-day review period of Public Resources Code section 30801 at issue in *Ham,* the period "operates less as a limitations period and more as a time limit for seeking review of the ruling of another tribunal. . . . Where review is sought of a Commission decision, there is no question when the 60-day period begins to run. The property owner has no need to 'discover' anything. . . . [T]he Legislature had every reason to conclude that 60 days provides ample time for a property owner to decide whether to challenge an adverse Commission decision." (210 Cal.App.4th at pp. 1496-1497, fn. omitted.) The same may be said of section 66499.37 and actions seeking review of local agency decisions applying land-use regulations.

Section 66499.37 is not unique in establishing a requirement that challenges to the actions of an administrative agency be brought promptly. In addition to that section and Public Resources Code section 30801, the following statutes establish such requirements: Code of Civil Procedure section 1094.5 (administrative mandamus—90 days); Public Resources Code section 21167 (California Environmental Quality Act decisions—30-180 days); Government Code sections 65901, 65903, 65907 (variances, conditional use and permits, board of zoning adjustment—90 days).

Section 66499.37 governs this action.

D. *Other Claims.*

Plaintiff argues for the first time in this court that it was error to sustain Glendale's demurrer without leave to amend because, had leave been granted, he could have added allegations that the tentative subdivision maps for the property were filed on October 1, 1986; he sold the property on December 21, 1986, and the final subdivision maps were approved on or about October 19, 1988, and April 27, 1989. This argument was not made in the Court of Appeal and is not among the issues presented in the petition for review. Moreover, we fail to see how such amendment would have stated a cause of action. If there were a compensable taking of an interest plaintiff had in the land, it must necessarily have occurred before he sold the property.

Plaintiff's theory may be that a landowner may convert his rights to challenge an uncompensated regulatory taking into an inverse condemnation action by selling the property before seeking administrative relief, either without applying for a development permit or during the permit process. We disagree for the reasons stated above. A court cannot determine if application of a land-use restriction will constitute a taking until a final administrative decision has been made regarding the use of the property. A potential diminution of value as a result of rezoning or land-use restrictions is not necessarily a taking.

Plaintiff also claims that the right to sue in inverse condemnation for regulatory takings had been abolished in California as a result of this court's holding in *Agins* v. *City of Tiburon, supra,* 24 Cal.3d 266, and was not revived until the decision in *First Lutheran Church* v. *Los Angeles, supra,* 482 U.S. 304, "overruled" *Agins* in 1987. That assertion not only misstates the impact of *First Lutheran Church,* but assumes that plaintiff had a right to initiate an action in inverse condemnation without first challenging the development restrictions of which he complains. As we have shown above, that assumption is unwarranted. Nothing in *Agins* precluded an action challenging application of the Glendale ordinance to plaintiff's property, or seeking damages in an inverse condemnation action if the ordinance was found to be invalid absent compensation and the city nonetheless denied plaintiff the right to develop the ridge-line property. Plaintiff had a remedy by which he could have avoided the restrictions brought about by the Glendale ordinance or obtained compensation for their imposition *if their impact constituted a taking* unless compensation was paid. He elected to forego both a judicial determination that the restrictions would constitute a compensable taking, and the remedy the state provides.

## III

### DISPOSITION

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Mosk, J., Kennard, J., Arabian, J., George, J., and Anderson, J.,* concurred.

Appellant's petition for a rehearing was denied September 22, 1994, and the opinion was modified to read as printed above.

---

*Presiding Justice, Court of Appeal, First Appellate District, Division Four, assigned by the Acting Chairperson of the Judicial Council.