**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NICHOLAS HONCHARIW, as Trustee, etc.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF STANISLAUS et al.,<br><br>Defendants and Appellants. | F069145<br><br>(Super. Ct. No. 680294)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>**[No Change in Judgment]** |

THE COURT:

It is ordered that the partially published opinion filed herein on June 3, 2015, be modified as follows:

1.      On page 8, footnote 4 is deleted in its entirety, which will require renumbering of all subsequent footnotes.

2.      On pages 10 through 12, the paragraphs under subheading "3.  *Scope of Hensler Exception"* are deleted in their entirety.  The following paragraphs are inserted in their place.

> *3.      Scope of the Hensler Exception*
>
> In *Hensler*, the Supreme Court stated that the exception to the statute of limitations applies only if the plaintiff in the inverse condemnation action "alleges the existence of a final judgment establishing that there has been a compensable taking of the plaintiff's land." (*Hensler*, *supra*, 8 Cal.4th at p. 7.)  Subsequently, the Supreme Court described its holding as follows: "In *Hensler* …, we held that, if a property owner brings a timely action to set aside

or void a regulation, he may *but need not* join a claim for damages. Instead, he may bring a damages claim separately after successfully challenging the regulation." (*Kavanau*, *supra*, 16 Cal.4th at p. 779.) The question before us it how to interpret these statements about what must be achieved in the initial mandamus action.

In Honchariw's view, the requirement for a final judgment establishing a compensable taking is no longer good law and all *Kavanau* requires is a final judgment establishing the *invalidity* of the challenged regulation or land use decision *on any ground*. The practice guide quoted by Honchariw uses language that supports his position. (See 2 Matteoni & Veit, Condemnation Practice in Cal., *supra*, §§ 16.4, 17.3, pp. 16-8 & 17-4.) However, the excerpts did not explicitly frame and answer the question whether the initial mandamus action must include the constitutional claims as a basis for invalidating the regulation or administrative decision.

In contrast, another practice guide has addressed what issues must be resolved in the initial mandamus action before a second action for compensation or damages is permitted:

"**Mandamus must be filed as a condition to an inverse condemnation action**. A property owner who claims that a condition to a development permit constitutes a taking generally must first exhaust the administrative remedies, file a mandamus action, and *receive a judicial determination that the regulation is a taking* before filing or pursuing an action for compensation. If the statute of limitations expires on and bars the mandamus action, the owner is barred from seeking compensation." (9 Miller & Starr, Cal. Real Estate (3d ed. 2007) § 25:54, p. 25:249, italics added.)

Thus, the practice guides are not in explicit agreement about what *Hensler* and *Kavanau* require of the first step in the two-step procedure.

One approach to *Kavanau*'s one paragraph summary of *Hensler* is to consider whether that paragraph contained general observations unnecessary to the holding in *Kavanau* and, thus, was dicta with no force as precedent. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 509, pp. 572-573; see *Trope v. Katz* (1995) 11 Cal.4th 274, 287 [Supreme Court's statement that is not precedent does not abrogate an earlier statement that is precedent].) It appears *Kavanau*'s summary of *Hensler*'s two-step procedure is dicta because the summary is not necessary to the reason ultimately given

2.

by the court for affirming the order sustaining the demurrer—that is, "[t]he remedy of future rent adjustments available to Kavanau under the due process clause precludes a finding of a taking in this case." (*Kavanau*, *supra*, 16 Cal.4th at p. 786.) The court could reach this conclusion without modifying the two-step procedure recognized in *Hensler*.

Another approach is to consider whether the language used in *Kavanau* expresses an intention by the Supreme Court to modify *Hensler*. In *Kavanau*, the court did not expressly acknowledge *Hensler*'s reference to a "final judgment establishing … a compensable taking." (*Hensler*, *supra*, 8 Cal.4th at p. 7.) As a result, the court did not explicitly approve or disapprove that language. Accordingly, we next consider whether the language used in *Kavanau* implies a modification of *Hensler*.

The court in *Kavanau* referred to *Hensler* as identifying "an exception to the general rule against splitting claims." (*Kavanau*, *supra*, 16 Cal.4th at p. 779.) This statement implies that the two-step procedure is invoked when a plaintiff's cause of action alleging an unconstitutional taking is split between the mandamus action and a subsequent action seeking damages. In other words, if the mandamus action does not allege an unconstitutional taking, that cause of action has not been "split" into (1) a claim challenging the validity of administrative action and (2) a subsequent claim for damages. (See generally, 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 45, pp. 108-109 [rule against splitting a cause of action].) Therefore, we infer from the statement in *Kavanau* about "an exception to the general rule against splitting claims" that the court continued to intend that the initial mandamus petition include the unconstitutional taking cause of action even though it was not required to seek compensation for the alleged taking. (*Kavanau*, *supra*, at p. 779.)

In addition, the circumstances and issues presented in *Kavanau* gave the Supreme Court little reason to consider and alter the formulation of the first step of the two-step procedure. First, the application of the two-step procedure was not contested in *Kavanau* and, therefore, the issues raised did not involve the timeliness of the second action. Second, the challenged rent control regulations had not been adopted under the Subdivision Map Act and, therefore section 66499.37 was not mentioned. Third, the circumstances presented did not cause the court in *Kavanau* to address the policies

3.

underlying the adoption of the two-step procedure.  Therefore, the inference that the Supreme Court intended to modify the requirements adopted in *Hensler* is weak.

The reason the mandamus proceeding must include the constitutional taking issue is that the court's determination that a regulatory taking has occurred triggers a range of options for the public entity—it could approve the project as proposed, conditionally approve the project, or exercise the power of eminent domain.  (*Hensler*, *supra*, 8 Cal.4th at p. 11.)  Which of these options is adopted by the public entity affects the scope of the taking and, thus, the just compensation due to land owner.  For example, if the public entity approves the project as proposed, the land owner's recovery would be limited to compensation for a temporary taking.  At the other end of the range of options, if the public entity were to exercise eminent domain, the land owner then would be entitled to compensation for a permanent taking.  The existence of this range of options means that the use of the two-step procedure is a convenient and efficient way to administer the decisions an agency must make to choose among those options.

Based on the foregoing, we read the Supreme Court's description of the *Hensler* decision as follows:

"In *Hensler* …, we held that, if a property owner brings a timely [mandamus] action to set aside or void a regulation [on constitutional grounds], he may *but need not* join a claim for damages.   Instead, he may bring a damages claim separately after successfully challenging the regulation [on constitutional grounds].  [Citation.]  Thus, in *Hensler* we identified an exception to the general rule against splitting claims.  [Citations.]  In accordance with *Hensler*, Kavanau brought his present claim for damages, alleging two causes of action."  (*Kavanau*, *supra*, 16 Cal.4th at p. 779.)

As a result, the two-step procedure approved in *Hensler* allows a plaintiff to postpone bringing a claim for damages caused by an unconstitutional taking until a mandamus proceeding has been completed, provided that the mandamus judgment or order establishes an unconstitutional taking or due process violation.

As to Honchariw's argument that he could not have obtained a "judgment establishing that there had been a *compensable* taking" (*Hensler*, *supra*, 8 Cal.4th at p. 7, italics added) because that claim was not ripe, we conclude that *Hensler* requires, at a minimum, the

4.

mandamus action to challenge the validity of the regulation or administrative decision on the ground it effected an unconstitutional taking. Such a challenge to the validity would be ripe when the mandamus petition is filed and, therefore, section 66499.37 requires that challenge to be brought within 90 days even though the exact parameters of any compensation for the taking cannot be determined until after the local agency has made a final decision about which option it will adopt in response to any judgment obtained in the mandamus proceeding. (*Hensler*, *supra*, at p. 11.)

3. On page 13, after the last paragraph ending in "under section 66499.37" add the following paragraph.

Alternatively, even if the exception applied and the statute of limitations did not begin to run until the Board's May 22, 2012, approval of the project, Honchariw's inverse condemnation complaint was untimely because it was filed in December 2012, well after the 90 days allowed by section 66499.37.

There is no change in judgment.

Appellant's petition for rehearing filed on June 19, 2015, is denied.

_____
FRANSON, J.

WE CONCUR:


_____
GOMES, Acting P.J.


_____
POOCHIGIAN, J.

5.

### <u>CERTIFIED FOR PARTIAL PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NICHOLAS HONCHARIW, as Trustee, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF STANISLAUS et al., <br><br> Defendants and Appellants. | F069145 <br><br> (Super. Ct. No. 680294) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County, Hurl Johnson, Judge.

Nicholas Honchariw for Plaintiff and Appellant.

Shute, Mihaly & Weinberger, Matthew D. Zinn, Laura D. Beaton; John P. Doering, County Counsel, and Thomas E. Boze, Deputy County Counsel, for Defendants and Appellants.

The plaintiff contends the trial court erred when it applied the 90-day statute of limitations contained in Government Code section 66499.37[1] to his inverse

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I and III of the Discussion.

condemnation action and concluded the action was untimely. The plaintiff argues California law allows him to postpone bringing a complaint for just compensation until after he successfully challenged the local government's land use decision in a mandamus proceeding.

We conclude that the 90-day statute of limitation in section 66499.37 applies to the inverse condemnation action. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1 (*Hensler*).) While we agree with the plaintiff that a land owner may elect to pursue a damage claim for an unconstitutional taking after a mandamus proceeding results in a final judgment, the initial mandamus action must result in "a final judgment establishing that there has been a compensable taking of the plaintiff's land." (*Id.* at p. 7.) Here, the plaintiff's mandamus action did not seek or establish an unconstitutional taking occurred when the county denied his subdivision application. Therefore, the plaintiff does not qualify for the two-step procedure identified in *Hensler*. As a result, the unconstitutional taking claim in his inverse condemnation action is time barred under section 66499.37.

As to the cross-appeal involving the denial of sanctions against the plaintiff, we conclude the trial court correctly determined the plaintiff's complaint was not frivolous.

We therefore affirm the judgment of dismissal.

## FACTS AND PROCEEDINGS

Plaintiff Nicholas Honchariw proposed to divide a 33.7-acre parcel of land in the Knights Ferry area of Stanislaus County into eight residential parcels and one undeveloped parcel. In connection with this proposal, Honchariw submitted a vesting tentative map application to the planning commission of the County of Stanislaus.

In February 2009, the planning commission considered Honchariw's application and his request for an exception to the county's rule requiring that all subdivision lots be

---

**1**      All further statutory references are to the Government Code unless stated otherwise.

connected to a public water system whenever such a system is available. The planning commission voted to deny Honchariw's application and the request for an exception.

Honchariw filed an administrative appeal. In March 2009, the Board of Supervisors of the County of Stanislaus (Board) voted to disapprove the subdivision project application and to deny the request for an exception to the rule requiring connections to an available public water system. The Board did not make any of the findings specified in subdivision (j) of section 65589.5 (i.e. that the project would have a specific, adverse impact and there is no satisfactory method to mitigate or avoid that adverse impact).

In June 2009, Honchariw filed a petition for administrative mandamus, challenging the Board's disapproval of his application.

The superior court denied the petition, concluding that the Board was not required to make written findings under subdivision (j) of section 65589.5 when it denied the application.

In November 2011, we reversed the superior court's judgment and ordered the court to issue a writ of mandate directing the Board to vacate its denial of Honchariw's subdivision project application, reconsider the application, and make certain determinations and findings in the event that it again denied the application. (*Honchariw v. County of Stanislaus* (2011) 200 Cal.App.4th 1066, 1081-1082.)

In January 2012, the superior court issued the writ of mandate and directed the Board to file a return to the writ within 90 days.[2] The Board's initial return was filed in April 2012 and stated that the hearing on its reconsideration of Honchariw's vesting tentative map application would be held in May 2012.

On May 22, 2012, the Board approved the project.

---

[2]     Before the Board's return was submitted, Honchariw filed a motion for statutory attorney fees. The superior court denied the motion, which was affirmed by this court in *Honchariw v. County of Stanislaus* (2013) 218 Cal.App.4th 1019.

3.

In December 2012—almost seven months after the approval—Honchariw filed a complaint against the County of Stanislaus and the Board (collectively defendants) that alleged they were liable for inverse condemnation and for violating his right to substantive due process. Honchariw alleged the Board's May 2012 approval of his application ended the temporary taking of his property without just compensation. He sought damages of $2.5 million for the alleged taking.

In October 2013, after successive successful demurrers, Honchariw filed a second amended complaint (SAC), which again asserted causes of action for inverse condemnation and deprivation of substantive due process rights. The SAC is the operative pleading for purposes of this appeal.

Defendants again demurred based on the 90-day statute of limitations contained in section 66499.37.

In December 2013, the superior court sustained the demurrer without leave to amend, concluding that the causes of action were untimely.

The day after their demurrer was sustained, defendants filed a motion for sanctions under Code of Civil Procedure section 128.7, which contended that Honchariw's original and amended complaints were frivolous. The motion requested sanctions in the amount of $77,610. Honchariw opposed defendants' motion for sanctions.

On January 3, 2014, the superior court held a hearing and denied the motion for sanctions. During the hearing, the court stated, "I thought there was pretty good arguments made on both sides, so I didn't feel it fell under [Code of Civil Procedure section] 128.7."

In March 2014, the superior court filed a judgment of dismissal.

Honchariw timely appealed. County filed a cross-appeal limited to the superior court's denial of its motion for sanctions.

## DISCUSSION

4.

I.      STANDARD OF REVIEW*

Code of Civil Procedure section 430.30, subdivision (a) provides that when "any ground for objection to a complaint … appears on the face thereof, … the objection on that ground may be taken by a demurrer to the pleading."  The statute of limitations is a "ground for objection to a complaint" for purposes of this provision and, therefore, may be raised in a demurrer.  (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 493.)

Generally, an order sustaining a demurrer on statute of limitations grounds is subject to de novo review on appeal.  (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)  Moreover, issues of statutory construction regarding the proper scope of section 66499.37 are questions of law subject to de novo review on appeal.  (*Legacy Group v. City of Wasco* (2003) 106 Cal.App.4th 1305, 1311.)

II.     STATUTE OF LIMITATIONS

A.      Statutory Text

The Subdivision Map Act (§ 66410 et seq.) includes a 90-day limitations period in section 66499.37, which provides in part:

> "Any action or proceeding to attack, review, set aside, void, or annul the decision of an advisory agency, appeal board, or legislative body concerning a subdivision, or of any of the proceedings, acts, or determinations taken, done, or made prior to the decision, or to determine the reasonableness, legality, or validity of any condition attached thereto, including, but not limited to, the approval of a tentative map or final map, shall not be maintained by any person unless the action or proceeding is commenced and service of summons effected within 90 days after the date of the decision.  Thereafter all persons are barred from any action or proceeding or any defense of invalidity or unreasonableness of the decision or of the proceedings, acts, or determinations…."  (§ 66499.37.)

---

*       See foonote, *ante,* page 1.

5.

B.    Supreme Court Cases

   1.    Overview

In 1994, the construction and application of section 66499.37 was addressed by our Supreme Court in *Hensler.*

In *Hensler,* the city approved construction of residential units on the plaintiff's 300-acre tract of land in April 1986, but rejected all proposed use of the major ridge lines within that tract. (*Hensler, supra,* 8 Cal.4th at p. 8.) The rejection was based on a city ordinance that prohibited construction on major ridge lines within the city. (*Id.* at pp. 7-8.) The ordinance had been enacted pursuant to authority granted by the Subdivision Map Act. (*Id.* at p. 8.) In September 1989, over three years after the city's administration decision to reject development of the ridge lines, the plaintiff filed an inverse condemnation action alleging the city's action prevented development of 40 percent of the tract. (*Ibid.*)

The city demurred to the plaintiff's inverse condemnation action, contending the 90-day statute of limitations in section 66499.37 barred the claim. (*Hensler, supra,* 8 Cal.4th at p. 8.) The trial court sustained the demurrer. (*Ibid.*) The Court of Appeal and the Supreme Court affirmed. (*Id.* at pp. 7-8.)

The issue presented in *Hensler* was which statute of limitation applied to an inverse condemnation complaint alleging the application of an ordinance adopted pursuant to the Subdivision Map Act resulted in an unconstitutional taking of the plaintiff's property. (*Hensler, supra,* 8 Cal.4th at pp. 6-7.) The Supreme Court resolved this issue by stating:

> "We conclude that an action in inverse condemnation, whether or not joined with an action in administrative mandamus [citation] challenging the ordinance or its application to the plaintiff's property, is governed by … section 66499.37 … *unless it alleges the existence of a final judgment establishing that there has been a compensable taking of the plaintiff's land.*

6.

"The legislative intent is clear. Section 66499.37 was enacted to ensure that any challenge to local legislative or administrative acts or decisions taken pursuant to ordinances enacted under the authority of the Subdivision Map Act will be brought promptly. A complaint in inverse condemnation, even one which does not expressly attack the validity of the ordinance or its application, and seeks only compensation for an alleged taking, must be deemed a challenge to the local action. This follows because the constitutional validity of the governmental action if uncompensated must be determined in the course of ruling on the claim that compensation is owed. Moreover, the validity of the action must be determined to afford the local entity the opportunity to rescind its action rather than pay compensation for a taking. A landowner may not, by seeking only compensation, force a governmental agency to condemn the property." (*Hensler*, *supra*, 8 Cal.4th at p. 7, italics added.)

Based on this analysis, the court concluded that the 90-day limitation period in section 66499.37 applied to the inverse condemnation claim.

A few years after *Hensler*, the Supreme Court considered a case in which the plaintiff had used the two-step procedure described in *Hensler*. (*Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761 (*Kavanau*).) Kavanau initially brought a timely administrative mandamus action challenging rent control regulations of the City of Santa Monica. The trial court denied the writ, but the Court of Appeal reversed, concluding that the rent control limits deprived the plaintiff of "'a just and reasonable return'" and were therefore unconstitutional. (*Id*. at p. 767.)

Kavanau then took the second step and filed a new lawsuit to recover the money he lost while the rent control provisions were in effect. He alleged the rent control regulations were both an unconstitutional taking and a violation of his due process rights. (*Kavanau*, *supra*, 16 Cal.4th at p. 767.) The trial court sustained a demurrer without leave to amend, and the Court of Appeal affirmed the dismissal of Kavanau's inverse condemnation claim.[3] (*Id*. at p. 766.) The Supreme Court granted review to consider

---

**3** On appeal, Kavanau abandoned his due process claim, which sought damages under 42 United States Code section 1983. (*Kavanau*, *supra*, 16 Cal.4th at pp. 768, 780.) Consequently, the only issues addressed by the appellate court related to his inverse

7.

"whether a taking occurred and what, if any, right to just compensation Kavanau might have." (*Id*. at p. 768.)

To provide background for its analysis of these constitutional issues,[4] the Supreme Court discussed Kavanau's use of the two-step procedure described in *Hensler*:

> "In *Hensler* …, we held that, if a property owner brings a timely action to set aside or void a regulation, he may *but need not* join a claim for damages. Instead, he may bring a damages claim separately after successfully challenging the regulation. [Citation.] Thus, in *Hensler* we identified an exception to the general rule against splitting claims. [Citations.] In accordance with *Hensler*, Kavanau brought his present claim for damages, alleging two causes of action." (*Kavanau*, *supra*, 16 Cal.4th at p. 779.)

The Supreme Court then addressed whether a taking occurred and determined "[t]he remedy of future rent adjustments available to Kavanau under the due process clause precludes a finding of a taking in this case." (*Kavanau*, *supra*, 16 Cal.4th at p. 786.) Because the takings clause was satisfied, Kavanau's inverse condemnation cause of action failed to state a claim for relief and the decision sustaining the demurrer was affirmed. (*Ibid*.)

The proper interpretation of the description of *Hensler* set forth in *Kavanau* stands at the center of the dispute presented in this appeal.

### 2. *Parties' Contention*

Honchariw contends *Hensler* and *Kavanau* should be read to mean that the first step in the two-step procedure is satisfied by any successful mandamus proceeding challenging the validity of a regulation or local land use decision. In contrast, defendants

---

condemnation claim, which sought just compensation for an unconstitutional taking. (*Id*. at p. 780.)

[4]    The background provided by the court (1) did not mention section 66499.37 because the challenged rent control regulations had not been adopted under the Subdivision Map Act and (2) did not address any other statute of limitations because the timeliness of the second lawsuit was not an issue before the court.

contend the rule that a writ of mandate and damages claim may, but need not, be joined in the same lawsuit applies only if the mandamus proceeding asserts that the challenged administrative action is invalid as an unconstitutional taking.

Honchariw supports his reading of the cases by citing the following discussion of section 66499.37 set forth in a practice guide:

"When challenging land use regulations [citation], the practitioner should examine the regulatory scheme for any special statute of limitations. In *Hensler* …, the [S]upreme [C]ourt held that the 90-day limitation period of … [section] 66499.37 applied to the property owner's challenge of a city's restrictions on that owner's plan to build a planned residential development…. *Hensler* did not require that the inverse suit for a taking be filed within the 90 days; it could be filed at the same time as the invalidation action or later. See *Kavanau* …." (2 Matteoni & Veit, Condemnation Practice in Cal. (Cont.Ed.Bar 3d ed. 2014) § 16.4, p. 16-8.)

Honchariw also quotes a subsequent provision from this practice guide discussing *Hensler* and *Kavanau*:

"*Kavanau* … clarifies that *Hensler* did not demand that the inverse takings claim be filed within the short statute of limitations for challenging a land use decision. The required first step of a mandate suit can proceed to conclusion and a later suit for compensation is proper." (2 Matteoni & Veit, Condemnation Practice in Cal., *supra*, § 17.3, p. 17-4.)

In Honchariw's view, these excerpts support his position that the mandamus action is not required to include an unconstitutional taking claim and any challenge that invalidates the local land use decision satisfies "[t]he required first step of a mandate suit …." (2 Matteoni & Veit, Condemnation Practice in Cal., *supra*, § 17.3, p. 17-4.) Honchariw argues this view makes sense because the claim that a compensable taking occurred was not yet ripe when he filed his mandamus action. (See *Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 325 [regulatory taking claim is not ripe for adjudication until the governmental entity charged with implementing the regulations has reached a final decision on application of regulations to affected property].)

9.

Defendants contend the statements in *Kavanau* and the practice guide that are the foundation for Honchariw's argument are general in nature and must be read in the context of the issues addressed by the Supreme Court and its rationale for authorizing the two-step procedure described in *Hensler*.

### 3. Scope of the Hensler Exception

First, we read the practice guide quoted by Honchariw as being ambiguous on the specific question presented in this appeal. The wording used certainly supports his position, but the excerpts did not explicitly frame and answer the question whether the initial mandamus action must include the constitutional claims as a basis for invalidating the regulation or administrative decision.

Second, another practice guide has addressed what issues must be resolved in the initial mandamus action before a second action for damages is permitted:

> "**Mandamus must be filed as a condition to an inverse condemnation action**. A property owner who claims that a condition to a development permit constitutes a taking generally must first exhaust the administrative remedies, file a mandamus action, and *receive a judicial determination that the regulation is a taking* before filing or pursuing an action for compensation. If the statute of limitations expires on and bars the mandamus action, the owner is barred from seeking compensation." (9 Miller & Star, Cal. Real Estate (3d ed. 2007) § 25:54, p. 25:249, italics added.)

Our conclusion about the proper scope of the *Hensler* exception is based on (1) the language used by the Supreme Court in *Hensler* and *Kavanau* as well as the rationale for the two-step procedure.

In *Hensler*, the Supreme Court stated that the exception to the statute of limitations applies only if the plaintiff in the inverse condemnation action "alleges the existence of a final judgment establishing that there has been a compensable taking of the plaintiff's land." (*Hensler*, *supra*, 8 Cal.4th at p. 7.) When the court discussed *Hensler* a few years later in *Kavanau*, it did not expressly acknowledge this statement and disapprove it.

10.

Therefore, we infer the requirement for an allegation about a final judgment establishing an unconstitutional taking was not eliminated or discarded by our Supreme Court in *Kavanau*.

In addition, the court in *Kavanau* referred to *Hensler* as identifying "an exception to the general rule against splitting claims." (*Kavanau*, *supra*, 16 Cal.4th at p. 779.) This statement implies that a plaintiff's cause of action alleging an unconstitutional taking is split between the mandamus action and a subsequent action seeking damages when the two-step procedure is used. In other words, if the mandamus action does not allege an unconstitutional taking, that cause of action has not been "split" into (1) a claim challenging the validity of administrative action and (2) a subsequent claim for damages. (See generally, 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 45, pp. 108-109 [rule against splitting a cause of action].) Therefore, we interpret the statement in *Kavanau* about "an exception to the general rule against splitting claims" to mean that the initial mandamus action must present the unconstitutional taking cause of action to the court, but need not seek compensation in that proceeding. (*Kavanau*, *supra*, 16 Cal.4th at p. 779.)

The reason the mandamus proceeding must include the constitutional taking issue is that the court's determination that a taking has occurred triggers a range of options for the public entity—it could approve the project as proposed, conditionally approve the project, or exercise the power of eminent domain. (*Hensler*, *supra*, 8 Cal.4th at p. 11.) Which of these options is adopted by the public entity affects the scope of the taking and, thus, the just compensation due to land owner. For example, if the public entity approves the project as proposed, the land owner's recovery would be limited to compensation for a temporary taking. At the other end of the range of options, if the public entity were to exercise eminent domain, the land owner then would be entitled to compensation for a permanent taking.

Based on the foregoing, we read the Supreme Court's description of the *Hensler* decision as follows:

"In *Hensler* …, we held that, if a property owner brings a timely [mandamus] action to set aside or void a regulation [on constitutional grounds], he may *but need not* join a claim for damages.  Instead, he may bring a damages claim separately after successfully challenging the regulation [on constitutional grounds].  [Citation.]  Thus, in *Hensler* we identified an exception to the general rule against splitting claims.  [Citations.]  In accordance with *Hensler*, Kavanau brought his present claim for damages, alleging two causes of action." (*Kavanau*, *supra*, 16 Cal.4th at p. 779.)

As a result, the two-step procedure approved in *Hensler* allows a plaintiff to postpone bringing a claim for damages caused by an unconstitutional taking until a mandamus proceeding has been completed, provided that the mandamus judgment or order establishes an unconstitutional taking or due process violation.

C.    Sufficiency of the Pleadings

1.    *Application of Section 66499.37*

Before addressing whether the exception (i.e., the two-step procedure) set forth in *Hensler* and discussed in *Kavanau* applies to Honchariw's claims, we first consider whether those claims fall within the statutory text of section 66499.37.

First, we conclude the Board's denial of Honchariw's vesting tentative map application in March 2009 was a "decision of an advisory agency, appeal board, or legislative body concerning a subdivision" as that phrase is used in section 66499.37.

Second, Honchariw's complaint for damages is an "action or proceeding to attack [or] review … the decision" of the Board concerning the subdivision proposed by Honchariw.  (§ 66499.37.)  The scope of this statutory text was addressed in *Hensler* when the court stated "section 66499.37 applies by its terms to *any* action involving a controversy over or arising out of the Subdivision Map Act" (*Hensler*, *supra*, 8 Cal.4th at p. 23), and concluded the inverse condemnation action before it was governed by

12.

section 66499.37 (*Hensler*, *supra*, at p. 7).  Similarly, we conclude that Honchariw's inverse condemnation action regarding the denial of Honchariw's subdivision application involves a controversy arising out of the Subdivision Map Act.

Therefore, Honchariw's inverse condemnation action falls within the statutory text of section 66499.37 and is subject to the 90-day limitation period, unless the exception identified in *Hensler* applies.

### 2. *Application of the Hensler Exception*

Based on our interpretation of *Hensler* and *Kavanau*, the exception identified by the Supreme Court in *Hensler* applies only if the plaintiff in the inverse condemnation action "alleges the existence of a final judgment establishing that there has been a compensable taking of the plaintiff's land."  (*Hensler*, *supra*, 8 Cal.4th at p. 7.)

Here, Honchariw alleged that his petition for writ of mandate sought to set aside the disapproval of the subdivision application "because the Board did not comply with the 'anti-NIMBY' protections of Gov. Code Sec. 65589.5(j)."  Honchariw did not allege that a compensable taking was established in the mandamus proceeding.

Therefore, Honchariw failed to make the necessary allegation to come within the exception identified in *Hensler* because he did not allege "the existence of a final judgment establishing that there has been a compensable taking of the plaintiff's land." (*Hensler*, *supra*, 8 Cal.4th at p. 7.)  Furthermore, Honchariw has not asserted that such an allegation can be made.  Consequently, we conclude that Honchariw's inverse condemnation action is untimely under section 66499.37.

## III.    SANCTIONS[*]

### A.    Standard of Review

Appellate courts apply the abuse of discretion standard of review to orders awarding or denying sanctions under Code of Civil Procedure section 128.7.  (*Guillemin*

---

[*]      See footnote, *ante*, page 1.

*v. Stein* (2002) 104 Cal.App.4th 156, 167.) The abuse of discretion standard calls for varying levels of deference depending on the aspect of the trial court's ruling under review. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.)

First, the trial court's findings of fact will be upheld if supported by substantial evidence. (*Haraguchi v. Superior Court*, *supra*, 43 Cal.4th at p. 711.) Second, its conclusions on questions of law are subject to independent review. (*Id*. at p. 712; e.g., *Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 922 [interpretation of language of Code Civ. Proc., § 128.7 is subject to de novo review].) Third, where the particular legal criteria being applied requires the trial court to consider and weigh multiple factors, the result of that weighing process will be upheld on appeal so long as the trial court did not exercise its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Jordan* (1986) 42 Cal.3d 308, 316; *Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089 [abuse of discretion standard measures whether, given the established evidence, trial court's decision falls within permissible range of options set forth by applicable legal criteria].)

B.     Sanctionable Conduct

Subdivision (b) of Code of Civil Procedure section 128.7 lists four types of sanctionable conduct.

Defendants argue Honchariw's pursuit of the inverse condemnation action was frivolous and therefore sanctionable under subdivision (b)(2) of Code of Civil Procedure section 128.7. That provision states it is improper for a pleading to present claims that are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." (*Ibid.*)

14.

C.      Contentions of the Parties

Defendants contend Honchariw's inverse condemnation claim was frivolous because it was filed well beyond the 90-day limitations period contained in section 66499.37 and "the California Supreme Court and courts of appeal have consistently held that the sweeping language of Government Code section 66499.37 applies to all claims arising from a local government's subdivision decision, including constitutional claims like Honchariw's takings and substantive due process claims."

Honchariw contends his complaint was not frivolous because he followed the two-step procedure approved in *Hensler* and *Kavanau*. As discussed in part II.B.2, *ante*, Honchariw supported his position by quoting excerpts from a practice guide.

D.      Analysis

We conclude that it was not unreasonable under an objective standard for Honchariw to adopt a literal interpretation of the following statement by our Supreme Court in *Kavanau*:

> "In *Hensler* …, we held that, if a property owner brings a timely action to set aside or void a regulation, he may *but need not* join a claim for damages. Instead, he may bring a damages claim separately after successfully challenging the regulation. [Citation.]" (*Kavanau*, *supra*, 16 Cal.4th at p. 779.)

Here, Honchariw brought a timely mandamus proceeding and obtained a writ of mandate directing the Board to set aside its decision denying his subdivision application. Thus, in a literal sense, Honchariw brought "a timely action to set aside or void" the Board's denial of his application. (*Kavanau*, *supra*, 16 Cal.4th at p. 779.) Honchariw's literal approach treated the statement in *Kavanau* as complete and failed to recognize it was general in nature. In other words, the description of the two-step procedure in *Kavanau* did not set forth all aspects of the rule established in *Hensler*. Specifically, that description was incomplete because it did not reiterate *Hensler*'s requirement that the initial mandamus proceeding must result in "a final judgment establishing that there has

15.

been a compensable taking of the plaintiff's land." (*Hensler*, *supra*, 8 Cal.4th at p. 7.) In effect, Honchariw's position was that *Kavanau* expanded the exception created in *Hensler*. We conclude this position was not unreasonable under an objective standard. Therefore, Honchariw's reliance on this interpretation of *Kavanau* in his initial and subsequent pleadings was not frivolous for purposes of subdivision (b)(2) of Code of Civil Procedure section 128.7.

Consequently, we conclude that the trial court did not abuse its discretion in denying defendants' motion for sanctions under Code of Civil Procedure section 128.7.

## DISPOSITION

The judgment of dismissal and the order denying the motion for sanctions are affirmed. The parties shall bear their own costs on appeal.

_____

FRANSON, J.

WE CONCUR:


_____

GOMES, Acting P.J.


_____

POOCHIGIAN, J.

16.