Filed 10/24/24  Gundogdu v. City of San Mateo CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| TONY MEHMET GUNDOGDU et al.,<br><br>　　　Plaintiffs and Appellants,<br><br>　　　　　v.<br><br>CITY OF SAN MATEO,<br><br>　　　Defendant and Respondent. | A168173<br><br>(San Mateo County Super. Ct. No. 22-CIV-04242) |

Plaintiffs Tony Mehmet Gundogdu and Aynur Gundogdu appeal after the trial court sustained a demurrer to their complaint for inverse condemnation arising from the denial of a permit to construct a 10-unit apartment building in San Mateo.  The court ruled the Gundogdus' action was barred by the applicable 90-day statute of limitations, because they filed suit more than four years after defendant City of San Mateo (the City) denied their permit application.

On appeal, the Gundogdus contend an exception to the 90-day limitations period applies.  According to them, an earlier administrative mandamus action brought by other parties to challenge the permit denial— an action that was the subject of our opinion in *California Renters Legal Advocacy & Education Fund v. City of San Mateo* (2021) 68 Cal.App.5th 820

1

(*California Renters*)—established that a taking of the Gundogdus' property occurred, so the present case merely seeks to fix the amount of damages. We reject the Gundogdus' argument, and we agree with the trial court that the present action is time-barred. We therefore affirm.

## I. BACKGROUND

### A. *The Permit Application and the Mandamus Action*[1]

In 2015, the Gundogdus submitted an application to build a four-story, 10-unit multifamily residential building in San Mateo. Staff to the City's planning commission, after securing minor changes to the proposal, recommended that the application be approved, but the planning commission denied the application without prejudice on October 10, 2017. The San Mateo City Council (the City Council) considered the appeal, and on February 5, 2018, upheld the planning commission's decision, also denying the application without prejudice.

On April 26, 2018, San Francisco Bay Area Renters Federation (an association of renters), California Renters Legal Advocacy and Education Fund (CARLA) (a nonprofit corporation), Victoria Fierce, and John Moon filed a petition for a writ of administrative mandamus (Code Civ. Proc., § 1094.5), alleging the permit denial violated the Housing Accountability Act (HAA)

---

[1] In summarizing the permit application process and the mandamus proceeding, we rely in part on the description of those events found in the Gundogdus' operative first amended complaint (FAC) in the present action. We also grant the City's unopposed request that we take judicial notice of certain documents filed in or related to the mandamus proceeding (documents that the trial court judicially noticed in ruling on the City's demurrer in this case). (Evid. Code, § 452, subds. (b), (d), 459, subd. (a).) Some of these events are also described in our prior opinion in *California Renters, supra,* 68 Cal.App.5th at pages 831–833.

2

(Gov. Code,[2] § 65589.5) and seeking to compel the project's approval. The petition named as respondents the City, the City Council, and the City's planning commission. The Gundogdus were named as real parties in interest. The petition did not include a claim for inverse condemnation or allege that the permit denial effected a taking of the Gundogdus' property.

The trial court (Hon. George A. Miram) denied the petition. CARLA and the two individual petitioners (Fierce and Moon) appealed, and in September 2021 we reversed. (*California Renters*, *supra*, 68 Cal.App.5th at p. 831 & fn. 2; *id.* at p. 833.) We concluded that the City's denial of the permit application violated the HAA and that the HAA was consistent with the California Constitution. (*California Renters*, at pp. 831, 845–846, 854.) We directed the trial court to grant writ relief and to order the City to reconsider the matter. (*Id.* at p. 855.) We stated: "The judgment of the trial court is reversed. The trial court shall issue a writ of mandate directing the City to (1) vacate its February 5, 2018 action upholding the planning commission's decision to deny the application, and (2) reconsider the challenge to the planning commission's decision in accordance with the views expressed in this opinion. The trial court may make any other appropriate orders that are consistent with this opinion." (*Ibid.*)

On December 16, 2021, the trial court (Hon. Nancy L. Fineman, assigned to the case following Judge Miram's retirement) issued a writ requiring the City respondents to vacate the City Council's denial of the permit application and to reconsider the matter in accordance with the views expressed in this court's opinion. On February 24, 2022, the City filed a return to the writ, confirming that it had reversed its prior decision; it had

---

[2] Undesignated statutory references are to the Government Code.

3

concluded that the application complied with all objective design standards established by the City; and it had issued the requested permits.

## B. *The Present Action*

On October 12, 2022, the Gundogdus filed their initial complaint in the present action, naming as defendants the City and the City Council. The complaint alleged a cause of action for violation of due process pursuant to title 42 United States Code section 1983, as well as a cause of action for inverse condemnation. The Gundogdus alleged the City denied their permit application on February 5, 2018. The Gundogdus alleged the denial caused them four or five years of delay damages from loss of rental income and at least a 50 percent increase in the cost of construction, for a total of at least $6 million.

The City parties demurred to the complaint, arguing both causes of action were barred by the applicable statutes of limitations. The trial court (Judge Fineman) sustained the demurrer with leave to amend.

The Gundogdus then filed a first amended complaint (FAC) on February 7, 2023. Like the original complaint, the FAC alleges that the City denied the Gundogdus' permit application on February 5, 2018, and that the denial caused four or five years of delay damages from loss of rental income and increased construction costs, totaling at least $6 million.

The FAC includes only a cause of action for inverse condemnation and omits the separate due process claim that was asserted in the original complaint. The FAC does, however, allege that a constitutional violation occurred. Specifically, the FAC alleges that, under principles of issue preclusion, there were findings of fact and conclusions of law in the previous mandamus action by the CARLA petitioners that establish a compensable taking in violation of the Fifth Amendment to the United States Constitution

4

and article I, section 19 of the California Constitution.  The FAC alleges that only the amount of compensation remains to be resolved.

The City defendants again demurred on statute of limitations grounds, and the court (Judge Fineman) sustained the demurrer, this time without leave to amend.  The court ruled the Gundogdus' present action for inverse condemnation filed in October 2022 was barred by the applicable 90-day limitations period (§§ 65009, subd. (c), 65589.5, subd. (m)), which began to run when their permit application was denied in February 2018.  Rejecting the Gundogdus' position, the court ruled there were no findings or conclusions in the prior mandamus action that establish a compensable taking occurred.

A judgment of dismissal was entered, and the Gundogdus appealed.[3]

## II. DISCUSSION

### A. *Standard of Review*

" 'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ' " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed." . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " ' " (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.)  " 'When a ground for objection to a complaint, such as the statute of limitations, appears on its face or from matters of which the court may or must take

_____

[3] The Gundogdus' notice of appeal lists the City as the only "defendant/respondent."

judicial notice, a demurrer on that ground is proper.' " (*Vaca v. Wachovia Mortgage Corp.* (2011) 198 Cal.App.4th 737, 746.)[4]

**B. *Analysis***

The parties agree the Gundogdus' inverse condemnation action had to be brought within 90 days of the City's February 2018 permit denial (although they cite different code provisions as establishing the 90-day period), unless an exception described in *Hensler v. City of Glendale* (1994) 8 Cal.4th 1 (*Hensler*) applies. In *Hensler*, the California Supreme Court held that "an action in inverse condemnation" challenging the adoption or application of an ordinance enacted pursuant to the Subdivision Map Act (§ 66410 et seq.) "is governed by" the 90-day limitations period in section 66499.37, "unless it alleges the existence of a final judgment establishing that there has been a compensable taking of the plaintiff's land." (*Hensler*, *supra*, 8 Cal.4th at p. 7.) *Hensler* "identified an exception to the general rule against splitting claims." (*Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 779 (*Kavanau*).)

In *Honchariw v. County of Stanislaus* (2015) 238 Cal.App.4th 1 (*Honchariw*), the Fifth District Court of Appeal considered the scope of "the *Hensler* exception" (*Honchariw*, at p. 11) to the usual statute of limitations (which in that case, as in *Hensler*, was the 90-day period in § 66499.37) (*Honchariw*, at p. 5). The *Honchariw* court concluded that, for a property

---

[4] We review a trial court's denial of leave to amend for abuse of discretion. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) But the Gundogdus acknowledged in the trial court that they could not amend to address the statute of limitations issue on which the trial court based its ruling sustaining the demurrer, and on appeal they do not develop an argument that the court should have granted leave to amend. Instead, the Gundogdus argue that the FAC as pleaded is legally sufficient, and we will focus on that question.

6

owner to bring a later claim for damages under "the two-step procedure identified in *Hensler*" (*Honchariw*, at p. 5), the property owner must first bring a timely mandamus action (within the 90-day limitations period) that expressly raises the taking issue (*id.* at pp. 13–14). The *Honchariw* court stated that "*Hensler* requires, at a minimum, the [prior] mandamus action to challenge the validity of the regulation or administrative decision *on the ground it effected an unconstitutional taking*." (*Honchariw*, at p. 13, italics added.) It is not sufficient that a prior mandamus action alleged or established that the regulation or administrative decision was invalid on some other ground, such as that it was inconsistent with statutory requirements. (*Id.* at pp. 14–15, 5.)

*Honchariw* explained: "The reason the mandamus proceeding must include the constitutional taking issue is that the court's determination that a regulatory taking has occurred triggers a range of options for the public entity—it could approve the project as proposed, conditionally approve the project, or exercise the power of eminent domain. (*Hensler*, *supra*, 8 Cal.4th at p. 11.) Which of these options is adopted by the public entity affects the scope of the taking and, thus, the just compensation due to landowner." (*Honchariw*, *supra*, 238 Cal.App.4th at p. 13.) In *Honchariw*, the prior mandamus action alleged only that local authorities had not complied with a statute (§ 65589.5, subd. (j), a provision of the HAA) and did not establish that a compensable taking had occurred. (*Honchariw*, at pp. 14–15.) The *Hensler* exception therefore did not apply, and Honchariw's later inverse condemnation action was untimely under section 66499.37. (*Honchariw*, at p. 15.)

The trial court, applying *Hensler* and *Honchariw*, concluded the Gundogdus' inverse condemnation claim is barred, although the court found

7

that the 90-day limitations periods applicable here are those set forth in sections 65009, subdivision (c) (governing challenges to permit decisions) and 65589.5, subdivision (m) (governing actions to enforce the HAA),[5] rather than in section 66499.37 (governing challenges to decisions pertaining to subdivisions). Because the mandamus action brought by the CARLA plaintiffs included no allegation or finding that the challenged permit denial effected a taking of the Gundogdus' property, there was no basis to apply the *Hensler* exception allowing assertion of a later damages-only claim after a taking is established in a prior mandamus action. The court ruled that therefore the Gundogdus' current inverse condemnation action (filed more than four years after the challenged permit denial) is barred by the 90-day statute of limitations.

We agree with the trial court. Under *Honchariw*, the *Hensler* exception to the 90-day limitations period does not apply, because the prior mandamus action did not allege, and did not result in a judgment establishing, that a taking of the Gundogdus' property occurred. (See *Honchariw*, *supra*,

---

[5] Section 65009, subdivision (c) provides that, in many circumstances, a claim challenging a local decision pertaining to a permit must be brought within 90 days of the decision. (§ 65009, subd. (c)(1)(E); *Save Lafayette Trees v. City of Lafayette* (2019) 32 Cal.App.5th 148, 155–156.) Section 65589.5, subdivision (m)—a provision of the HAA, the statute invoked by the CARLA plaintiffs in the earlier mandamus action—states that any action "to enforce" the HAA's limitations on local governments generally must be filed and served within 90 days of the challenged governmental decision. (§ 65589.5, subd. (m)(1).)

We agree with the trial court and the City that these provisions (rather than § 66499.37) apply to the Gundogdus' inverse condemnation claim. We will assume for purposes of this opinion, however, that the same *Hensler* exception applies to all these 90-day limitations periods, allowing later assertion of a damages-only inverse condemnation claim if the taking itself is established in the earlier, timely mandamus action.

238 Cal.App.4th at pp. 13–15.) As noted, the CARLA petitioners who brought the mandamus proceeding did not assert an inverse condemnation claim or argue that the challenged permit denial resulted in a taking of the Gundogdus' property. And the Gundogdus themselves, although they were named as real parties in interest, did not seek to intervene as petitioners or to present an inverse condemnation claim (or any other claim) on their own behalf. Finally, neither the trial court nor this court held in the CARLA proceeding that a compensable taking of the Gundogdus' property had occurred. Instead, that action established that (1) the City's permit denial violated *the HAA* by blocking the construction of housing based on criteria that were not " 'objective' " for purposes of that statute (*California Renters, supra,* 68 Cal.App.5th at pp. 831, 845–846), and (2) the HAA does not violate the California Constitution (*id.* at p. 831).

Seeking to avoid this result, the Gundogdus contend the Court of Appeal's conclusions in *Honchariw* as to the scope of the *Hensler* exception (i.e., that the exception only applies if the taking issue was expressly raised in the prior mandamus proceeding) are "dicta" and in any event are inconsistent with the California Supreme Court's decision in *Kavanau* (a case that was decided in 1997, three years after *Hensler*). Urging a more expansive exception to the 90-day limitations period, the Gundogdus argue that, even if no taking issue was expressly raised in the prior proceeding, the *Hensler* exception allowing a later inverse condemnation claim should apply if, under principles of issue preclusion, it can be later determined that the prior proceeding established there was a compensable taking. The Gundogdus assert that, under this broader standard, the FAC here is sufficient to withstand the City's demurrer because it alleges there were

9

findings of fact and conclusions of law in the CARLA proceeding that establish a compensable taking occurred.

We are not persuaded by the Gundogdus' arguments. First, we do not agree the *Honchariw* court's analysis of the scope of the *Hensler* exception was "dicta." The plaintiff in *Honchariw* argued his inverse condemnation action was timely because he previously had successfully challenged the local government's land use decision in a mandamus proceeding (*Honchariw, supra*, 238 Cal.App.4th at p. 4), so the appellate court had to determine whether the prior mandamus action (which did not seek to establish an unconstitutional taking occurred) was sufficient to allow the plaintiff to qualify for "the two-step procedure identified in *Hensler*" (*Honchariw*, at p. 5). The court's conclusions on that point were not dicta.

In any event, even if the *Honchariw* court's analysis could be parsed and characterized in part as dicta, we find the reasoning on this point in *Honchariw* persuasive, and we do not agree it is inconsistent with the Supreme Court's decisions in *Hensler* and *Kavanau*. *Honchariw* is fully consistent with *Hensler*. The *Hensler* court explained that the purpose of the 90-day limitations period at issue there (found in § 66499.37) was to ensure that any challenge to a covered local legislative or administrative decision is brought promptly (*Hensler, supra*, 8 Cal.4th at p. 7) and thus "to permit and promote sound fiscal planning by state and local governmental entities" (*id.* at p. 27).

The *Hensler* court stated: "The legislative intent is clear. Section 66499.37 was enacted to ensure that any challenge to local legislative or administrative acts or decisions taken pursuant to ordinances enacted under the authority of the Subdivision Map Act will be brought promptly. A complaint in inverse condemnation, even one which does not expressly attack

10

the validity of the ordinance or its application, and seeks only compensation for an alleged taking, must be deemed a challenge to the local action. This follows because the constitutional validity of the governmental action if uncompensated must be determined in the course of ruling on the claim that compensation is owed. Moreover, the validity of the action must be determined to afford the local entity the opportunity to rescind its action rather than pay compensation for a taking. A landowner may not, by seeking only compensation, force a governmental agency to condemn the property." (*Hensler*, *supra*, 8 Cal.4th at p. 7.)

Later in its opinion, the *Hensler* court emphasized this point, stating: " 'The requirement that challenges to administrative actions constituting takings be brought initially by administrative mandamus assures that the administrative agency will have the alternative of changing a decision for which compensation might be required. If no such early opportunity were given, and instead, persons were permitted to stand by in the face of administrative actions alleged to be injurious or confiscatory, and three or five years later, claim monetary compensation on the theory that the administrative action resulted in a taking for public use, meaningful governmental fiscal planning would become impossible.' " (*Hensler*, *supra*, 8 Cal.4th at pp. 27–28; *id.* at p. 28 ["if an owner were permitted to bypass the administrative mandamus remedy and delay initiating an inverse condemnation action for almost five years '[i]n given cases and certainly in the aggregate, the financial burden on the state could be overwhelming' "].)

The Gundogdus suggest the policy of requiring prompt challenges to land use decisions is satisfied as long as the earlier action attacks the validity of the decision on any ground. But as *Honchariw* explained, it is necessary for the prior mandamus proceeding to raise the taking issue, because that

11

allows the local government the opportunity to limit its exposure to such claims. (*Honchariw*, *supra*, 238 Cal.App.4th at p. 13.) A trial court's determination that a regulatory taking has occurred "triggers a range of options for the public entity—it could approve the project as proposed, conditionally approve the project, or exercise the power of eminent domain." (*Ibid.*) "The existence of this range of options means that the use of the two-step procedure is a convenient and efficient way to administer the decisions an agency must make to choose among those options." (*Ibid.*) And to ensure the public entity has an opportunity to choose among these options (rather than being surprised by a taking claim years later), the taking claim must be raised in the initial mandamus action. "[T]he two-step procedure approved in *Hensler* allows a plaintiff to postpone bringing a claim for damages caused by an unconstitutional taking until a mandamus proceeding has been completed, *provided that* the mandamus judgment or order establishes an unconstitutional taking or due process violation." (*Honchariw*, at p. 13, italics added.)

The Gundogdus rely in part on a description of *Hensler* in the Supreme Court's decision in *Kavanau*, but we are not persuaded that *Kavanau* supports the Gundogdus' position. In *Kavanau*, the plaintiff landlord used the two-step procedure described in *Hensler*. Kavanau initially brought a timely administrative mandamus action and successfully challenged rent control regulations as unconstitutional on the ground they deprived him of " 'a just and reasonable return.' " (*Kavanau*, *supra*, 16 Cal.4th at pp. 766–767.) Kavanau then filed an inverse condemnation action, and, after the trial court and the Court of Appeal ruled against him, the Supreme Court granted review "to consider whether a taking occurred and what, if any, right to just compensation Kavanau might have." (*Id.* at p. 768.)

As background for its analysis of these constitutional issues, the Supreme Court discussed Kavanau's use of the two-step procedure described in *Hensler*: "In *Hensler . . .* , we held that, if a property owner brings a timely action to set aside or void a regulation, he may *but need not* join a claim for damages. Instead, he may bring a damages claim separately after successfully challenging the regulation. [Citation.] Thus, in *Hensler* we identified an exception to the general rule against splitting claims. [Citations.] In accordance with *Hensler*, Kavanau brought his present claim for damages, alleging two causes of action." (*Kavanau, supra*, 16 Cal.4th at p. 779.)

The Supreme Court then addressed whether a taking occurred and determined "[t]he remedy of future rent adjustments available to Kavanau under the due process clause precludes a finding of a taking in this case." (*Kavanau, supra*, 16 Cal.4th at p. 786.) Because the takings clause was satisfied, the court affirmed the ruling sustaining the demurrer to Kavanau's inverse condemnation claim. (*Ibid.*)

In *Honchariw*, the court addressed a dispute as to the proper interpretation of the *Kavanau* court's description of *Hensler*. (*Honchariw, supra*, 238 Cal.App.4th at pp. 9–10.) The *Honchariw* court summarized the parties' positions: "Honchariw contends *Hensler* and *Kavanau* should be read to mean that the first step in the two-step procedure is satisfied by any successful mandamus proceeding challenging the validity of a regulation or local land use decision. In contrast, defendants contend the rule that a writ of mandate and damages claim may, but need not, be joined in the same lawsuit applies only if the mandamus proceeding asserts that the challenged administrative action is invalid as an unconstitutional taking." (*Honchariw*, at p. 10.)

13

The *Honchariw* court concluded that the brief description of *Hensler* in *Kavanau*—a case where the two-step procedure was not contested, and no issues were raised as to the timeliness of the second action—did not reflect an intention by the Supreme Court to modify the *Hensler* requirement that the first proceeding must include the constitutional taking issue (not just a claim that the local government decision was invalid on some other ground). (*Honchariw*, *supra*, 238 Cal.App.4th at pp. 11–13.) We agree. In light of the need for prompt presentation of challenges to local government land use decisions as outlined in *Hensler* and *Honchariw*, we conclude the *Hensler* two-step procedure is available only when the initial mandamus proceeding seeks to establish that an unconstitutional taking occurred (*Honchariw*, at p. 5), a requirement the Gundogdus have not met.

The Gundogdus assert that the *Kavanau* court, by discussing the rent adjustment mechanism that satisfied constitutional concerns in that case (*Kavanau*, *supra*, 16 Cal.4th at p. 786), established that it is appropriate to "examine[] the nature of the claimed taking and look[] to determine whether the taking was established in the mandamus action." But contrary to the Gundogdus' view, we do not glean from *Kavanau*'s analysis any holding that, under *Hensler*, a property owner may remain silent about the taking issue in the initial mandamus action and then bring it up years later in an inverse condemnation case demanding that a municipality pay millions of dollars in compensation, the approach the Gundogdus have taken here. For the reasons we have discussed, we agree with *Honchariw* that, to use the *Hensler* two-step procedure, a property owner must raise the taking issue in the initial mandamus action. Since the Gundogdus did not do so, their current inverse condemnation claim is barred by the statutes of limitations.

14

Finally, because the taking issue must be raised in the initial mandamus action to allow the public entity to choose from a "range of options" (such as approving the proposed project, conditionally approving it, or exercising the power of eminent domain) (*Honchariw*, *supra*, 238 Cal.App.4th at p. 13), we reject the Gundogdus' contention that this requirement may be satisfied by an after-the-fact taking determination pieced together under issue preclusion principles in an action filed years later. A later determination that the mandamus action established a taking (even though the property owner made no taking claim at the time) would not satisfy the requirement that a local government must be given the opportunity to respond to a taking claim in a way that allows for responsible management of public finances. (See *Hensler*, *supra*, 8 Cal.4th at pp. 11–12 [city must have the option to rescind a land use decision to avoid having to pay compensation for an alleged taking].)

In addition, although it is not necessary to our decision, we note that issue preclusion principles do not establish a taking here in any event. "Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) "In summary, issue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.) As discussed, in the prior mandamus action, no party brought, and neither the trial court nor this court adjudicated, any allegation that the City's permit denial effected a taking of the Gundogdus' property. Instead, that action centered on whether the permit denial violated the HAA. (*California Renters, supra,* 68 Cal.App.5th at pp. 831, 845–846.)

15

Contrary to the Gundogdus' contention, our opinion in *California Renters* did not establish that a taking occurred. As noted, we held in that case that the City's permit denial violated the HAA because the criteria on which the City relied were not objective within the meaning of the HAA. (*California Renters, supra,* 68 Cal.App.5th at pp. 831, 845–846.) But we did not hold, as the Gundogdus assert, that the City lacked any discretion in deciding the permit application, or that the City had a ministerial duty to issue a permit. To the contrary, although we found the criteria on which the City had relied were not objective, we emphasized that the City was free to consider other applicable criteria or standards in deciding whether to grant the application (as long as those criteria or standards were objective), and that the City could attach conditions to any grant of a permit, as long as those conditions did not reduce the density of the project. (*California Renters,* at pp. 854–855, 846, citing § 65589.5, subd. (j)(1).) In our disposition, we directed the trial court to issue a writ of mandate requiring the City to reconsider the permit application in accordance with the views expressed in our opinion. (*California Renters,* at p. 855.) We did not hold the City was required to issue the permit.

*Ruegg & Ellsworth v. City of Berkeley* (2021) 63 Cal.App.5th 277, cited by the Gundogdus, does not support their position. That case involved a statutory provision (§ 65913.4) that required "ministerial" issuance of a permit if certain conditions were satisfied (*Ruegg & Ellsworth*, at p. 286), although the court also discussed the HAA in connection with parts of its analysis (*id.* at pp. 295–297, 320). Here, as noted, the HAA does not require (and we did not hold in the CARLA action that it required) the ministerial issuance of permits. (*California Renters, supra,* 68 Cal.App.5th at pp. 845–

16

846, 854–855.)  Our holding in *California Renters* that the City failed to comply with the HAA did not establish that the Gundogdus suffered a taking.

### III. DISPOSITION

The judgment is affirmed.  The City shall recover its costs on appeal.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.